[Civ. No. 25484. Second Dist., Div. Two. Jan. 26, 1962.]

SARAH T. McCARTHY, Plaintiff and Appellant, v. MO-
BILE CRANES, INCORPORATED, Defendant and
Respondent.

Fred R. Metheny for Plaintiff and Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Defendant and Respondent.

ASHBURN, J.—Appeal from judgment for defendant in action for wrongful death of Thomas A. McCarthy.

The appeal is presented upon a partial reporter's transcript. Appellant's notice given pursuant to rule 4(b), Rules on Appeal, states as the sole point to be presented by her the following: "The point herein to be raised is whether or not the Court could, in a consolidated action, completely deny the right of a party to examine a witness, not her own." The reporter's transcript contains only the testimony of one witness, James H. Walker. Rule 52 says: "If a record on appeal does not contain all of the papers, records and oral proceedings, but is certified by the judge or the clerk, or stipulated to by the parties, in accordance with these rules, it shall be presumed in the absence of proceedings for augmentation that

it includes all matters material to a determination of the points on appeal." The matter of augmentation is covered by rule 12 which in pertinent part provides: "(a) On suggestion of any party or on its own motion, the reviewing court, on such terms as it deems proper, may order that the original or a copy of a paper, record or exhibit offered at or used on the trial or hearing below and on file in or lodged with the superior court be transmitted to it, . . . and when so transmitted they shall be deemed a part of the record on appeal." In practice, augmentation upon the court's motion is made by ordering the superior court clerk's file sent to the appellate court; this practice is liberally pursued, at least in this district.

Mr. B. E. Witkin's review of "New California Rules on Appeal," 17 Southern California Law Review 80 et seq., says at page 130: "The language is general, and the procedure is therefore available to add to or correct any type of record, including an agreed statement." And at page 131: "But though the power of the court is not affected, the rules impliedly call for great liberality in its exercise. Not only is the doctrine of liberal construction stated in Rule 53(a) an appropriate guide, but it would seem that the successful operation of all the rules dealing with short records depends upon a free permissive use of the augmentation procedure, in order that those who attempt in good faith to eliminate nonessential matter will not be penalized by inadvertent omissions."

In this spirit the court said, in *Alkus* v. *Johnson-Pacific Co.*, 80 Cal.App.2d 1, 19 [181 P.2d 72]: "If the court is not satisfied with a short record, or desires further light on any point, it may invoke the augmentation rule on its own motion, ordering up as much additional record as it desires, and may then proceed to decide the case on the actual, augmented record." This court, in *Kuhn* v. *Ferry & Hensler*, 87 Cal.App.2d 812, 814 [197 P.2d 792]: "When it appears that proceedings were had or evidence was introduced which should be considered on appeal a denial of the right to augment would be an abuse of discretion. Moreover, it is the duty of the court, when it desires further knowledge upon any point, to augment the record before proceeding with its decision. (*Alkus* case, *supra*, pp. 11-19.)"

The instant case is one of three which were consolidated for trial in the lower court. Examination of the record before us discloses that we are confronted with a difficult task of determining the merits of the appeal because of lack of knowledge of the exact status of the McCarthy case and of proceedings

had before and after the taking of the testimony of the witness Walker. So, with consent of counsel expressed upon oral argument, we augmented the record by ordering up the clerk's files in the three actions and they are now before us. We entertain no doubt that this procedure is entirely consistent with rule 52, or that it and rule 12 are to be construed together as parts of an harmonious whole. With this aid we deduce the basic facts to be as follows.

At the time of the accident, May 15, 1958, decedent McCarthy was employed by Builders Steel Corporation as a structural iron worker. His employer was engaged as a subcontractor in construction of a women's dormitory on the campus of the University of Southern California in Los Angeles. Mobile Cranes, Inc., had furnished and was using on the job a 25-ton mobile crane which was engaged in removal of various temporary steel columns from a certain building; the boom and jib of the crane collapsed, fell on the roof of the dormitory building and crushed McCarthy who was working thereon. Carl Standridge was working on the premises as an employee of a subcontractor, J. H. Bryant Roofing Company; he was struck by the falling boom and was injured.

Mobile Cranes, Inc., sued Builders Steel Corporation and its employee, Alexander Cooke, for negligent damage to the crane (Superior Court No. C702855). Standridge sued Builders Steel and Mobile Cranes, Inc., for personal injuries alleged to have been caused by negligence of both of them (Superior Court No. 718986). McCarthy's widow and infant daughter sued Mobile Cranes, Inc., and its employee, Lloyd Benton, for wrongful death of McCarthy (Superior Court No. 722599). Mobile Cranes, Inc., claimed the accident was caused by negligence of Builders Steel's employee Cooke in giving signals to Mobile's man, Benton; Builders Steel asserted negligence on the part of Mobile in maintenance, operation and rigging of the crane. McCarthy charged negligence against Mobile and its operator, while Standridge claimed negligence on the part of both Builders Steel and Mobile Cranes.

The court made an order consolidating the three cases. While it did not expressly consolidate for the purpose of trial only, the parties and issues were such that the cases were not susceptible of merger with its single set of findings (or verdict) and single judgment. In legal effect the consolidation was for trial only. (See 1 Cal.Jur.2d §§ 72-73, pp. 694-697; 48 Cal. Jur.2d § 5, p. 82.)

A pretrial conference order incorporates by reference a "Joint Pre-Trial Statement" signed and filed by counsel which lists the issues as follows: "1. Negligence of MOBILE CRANES, INC. 2. Negligence of BUILDERS STEEL CORPORATION, INC. 3. Contributory negligence of CARL STANDRIDGE. 4. Proximate cause. 5. Nature and extent of injuries and damages to CARL STANDRIDGE. 6. Nature and extent of damages to DORIS A. McCARTHY and SARAH T. McCARTHY. 7. Property damage suffered by MOBILE CRANES, INC. 8. Rental value of cranes due to MOBILE CRANES, INC. by BUILDERS STEEL CORPORATION, INC."

The jury rendered a verdict for $4,100 in favor of Mobile Cranes against Builders Steel; one for $3,000 in favor of Standridge against Builders Steel; and a verdict for defendants Mobile Cranes and Benton in the McCarthy case.

The trial consumed the following trial days—August 24, 25, 26, 29, 30, 31, September 1, 2, 6, 7. The minutes show that Mobile Cranes called witnesses on August 25 and 26 and rested on August 29; McCarthy called witnesses on August 29 and rested on August 30; Standridge produced witnesses on August 30 and rested on August 31; Builders Steel's witnesses were heard on August 31, September 1 and 2 and it rested on September 2. All parties rested on the last-mentioned date.

In the afternoon of August 31 Mr. Miller, counsel for defendants Builders Steel and Cooke, examined James H. Walker as their expert witness. His direct examination consumed pages 5 to 78 of the partial transcript. Cross-examination by Mr. Greenwald, attorney for Standridge, covers pages 80 to 84; that of Mr. Horgan, attorney for Mobile Cranes, pages 84 to 98. At that point (September 1), Mr. Metheny undertook to cross-examine on behalf of plaintiffs McCarthy. He began at page 98 and while he was still wading in the warm shallows at page 103 the trial judge invited all counsel into chambers and raised the question as to whether Mr. Metheny was entitled to examine the witness at all.

We quote the ensuing colloquy: "THE COURT: In the first place, I can't quite figure out your position, Mr. Metheny, as to whether you have a right to cross-examine this witness. Your case in chief, your case has been rested, and I don't quite see your position in connection with cross-examining this witness, in the first place. MR. METHENY: Well, certainly, your Honor, my position is not identical with Builders Steel, as far as the proof is concerned. MR. MILLER: I would think that even that he had rested, he would still have the right to ques-

tion witnesses. He still has an interest in the outcome of the lawsuit. THE COURT: Well, he certainly has an interest in the outcome of the lawsuit, there is no question about that. MR. HORGAN: That is not concurrent with his right to question. MR. MILLER: I would think that so long as witnesses who have testified concerning the events of the case are concerned, that his party has a right to have their counsel question that witness to develop facts that would be helpful to her case, if it could be developed. MR. HORGAN: That would be very true, in accordance with proper procedure, but in his position, the most that this witness could be, would be a rebuttal witness. MR. MILLER: All that I am pointing out is that I represent Builders Steel, I do not represent his client. His client is entitled to have a representative here and examine witnesses. THE COURT: We have this situation, gentlemen. We have three cases that have been consolidated for trial, consolidated for trial only. It isn't a situation where if this case were being tried before the Court without a jury there would be only one set of findings, in my opinion. It seems to me that in a case of this kind, there would be three sets of findings. Some cases are consolidated for all purposes, in which event there would only be one set of findings. But I think that these cases are divisible, and for that reason I think Mr. Horgan's suggestion that Mr. Metheny didn't have the right of cross-examination is probably good. And this case has got to end sometime. MR. METHENY: Your Honor, I believe that the order of the matters involved in this case was decided as a procedural matter, but I think it might just as well have been decided that the Mobile Crane would put on their case and that Builders Steel would then defend, and that being true, I would have had an opportunity unquestionably to cross-examine Builders Steel's witness. THE COURT: No, I don't think so. Builders Steel is not an opposite party to you. It is not an opposite party to you, and I don't believe you have the right of cross-examination. MR. METHENY: They are not in identical position as far as liability is concerned. They can establish their case by proving no negligence on their part. However, to establish mine, I have to prove negligence against Mobile Crane. THE COURT: But you only have the right of cross-examination of opposing witnesses to you in your case. . . . I don't think that you are in a position to cross-examine this witness, who is not adverse to you, and that is going to be my ruling." Then followed these following examinations: Redirect by Miller, pages 107 to 120; Recross by Horgan, pages

121 to 127; Redirect by Miller, pages 128 to 132. "THE COURT: Now, ladies and gentlemen of the jury, please keep constantly in mind that when I am discussing the evidence with counsel, you are not to pay any attention to what I think the evidence is. You are the ones that will have to determine that. I just discuss it with counsel for the purpose of my making up my mind which way I am going to rule. That is all. I will never try to do or say anything to influence you one way or the other in this case. . . . And if anything I may have said or done seems to so indicate to you, why, then you are instructed to disregard it."

Mr. Miller then called one Blewett to the stand. Our record discloses only that bare fact. Appellant's counsel argues that he was denied the right to cross-examine that witness; the record does not so show but the ruling upon Walker plainly indicates that such would have been the ruling had appellant's counsel pressed for the right to cross-examine Blewett.

Counsel now argues that he was denied a fundamental right and that that ruling was of such gravity that section 4½ of article VI of the Constitution cannot cure it.

██ *In re Winchester*, 53 Cal.2d 528, 532 [348 P.2d 904], says: "Whether or not an erroneous denial of the right to fully cross-examine a witness is a denial of due process depends on the facts of the particular case. (See discussion and cases cited in *Priestly* v. *Superior Court*, 50 Cal.2d 812, 822-823 [330 P.2d 39], concurring opinion.)" ██ The concurring opinion in *Priestly* at page 822: "The right to cross-examination, which is basic to our judicial system and has been from earliest times, is part of this fundamental right available to an accused. [Citations.] An improper denial of the right of cross-examination constitutes a denial of due process [citations]. ██ Apart from historical considerations the reason cross-examination is one of the ingredients of a fair hearing is practical. In a trial or preliminary hearing there is usually a disputed factual issue. Where this occurs, cross-examination provides a major method for establishing the accuracy and reliability of direct testimony. The method of cross-examination is necessary since experience tells us that ex parte statements are too uncertain and unreliable to be considered in the investigation of controverted facts. [Citations.]

"A violation of these fundamental rights at a preliminary hearing results in a deprivation of due process of law. [Citations.]

 "Not every instance in which a cross-examiner's question is disallowed will defendant's right to a fair hearing be abridged, since the matter may be too unimportant [citations], or there may be no prejudice [citation], or the question may involve issues which can be brought up at a more appropriate time [citation]. However, where the subject of cross-examination concerns the matter at issue there can be no doubt that the refusal to permit such question results in a denial of a fair hearing. [Citations.]"

 *Alford* v. *United States*, 282 U.S. 687, 694 [51 S.Ct. 218, 75 L.Ed. 624] (cited in *Priestly, supra*), points out an important distinction in this field. It says: "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. . . . But no such case is presented here. The trial court cut off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error."

The portions of cross-examination which were allowed in the case before us fall within the legitimate category indicated by *Alford*. Objection to two questions was sustained on the ground that the question had been asked and answered; two fell before the objection that they assumed facts not in evidence; others were rephrased to obviate objections; a few were answered. It cannot be said that any of these rulings, if *assumed* to be erroneous, was anything more than error such as often occurs in an ordinary trial, and what we have to say about denial of cross-examination is not intended and should not be construed as an impingement upon the broad discretion of the trial judge to regulate, limit and assist in guiding the cross-examination, all as a part of his duty to expedite the hearing. However, we have concluded that in this case the challenged ruling constituted a denial of a right to any cross-examination and is to be considered in that light.

First it was said that the cases had been consolidated for trial only and the *McCarthy* case had been rested. The suggestion of McCarthy's resting grew out of the procedure adopted for the consolidated trial. Mobile Cranes first called its witnesses and rested; then McCarthy did the same thing; then Standridge and finally Builders Steel. At oral argument it was conceded that all the cases and all the facts were argued

together before the jury. In response to the judge's suggestion that he had rested his case appellant's counsel replied that his burden was not identical with Builders Steel (which had called the witness) as far as the proof was concerned. By this he doubtless meant what he says in his opening brief: "Now, in juxtaposing these two cases, it becomes crystal clear that Builders Steel Corporation only had to prove an absence of negligence on its part to prevail as defendant against Mobile Cranes, Inc.; whereas appellant was obligated to prove negligence on the part of respondent, Mobile Cranes, Inc. . . . Second, as a matter of fact, force and effect, it only can. be concluded that Witness Walker's testimony, e.g., on cross-examination, was seriously damaging to appellant because it tended to obliterate any element of negligence on the part of respondents. Therefore, to that extent, the testimony *was antagonistic* to appellant as was the witness at the time he testified. Finally, it serves no purpose to attempt to label appellant's right. It, in fact, makes no difference whether the examination was cross or direct or nothing akin thereto because in a consolidation of cases for trial appellant had an inalienable right to examine *all witnesses* pursuant to the definite provisions of Section 1846 of the Code of Civil Procedure."

It seems apparent that a trial which involves three cases, all of them presenting the direct issue of negligence of one of the parties, is never finished in fact until all the evidence is in. To be more specific, the fact that McCarthys had technically "rested" their case should not in a consolidated cause preclude them from countering any proof thereafter produced by any party which tended to disprove Mobile Cranes' negligence and to place the onus on Builders Steel only. ▮▮▮ The Wyoming Supreme Court said, in *Durante* v. *Consumers Filling Station Co. of Cheyenne*, 71 Wyo. 271 [257 P.2d 347, 355] : "Where several actions are consolidated for trial, the evidence received must be deemed applicable in its entirety to each of the cases, unless the record discloses the contrary or the evidence is immaterial or irrelevant to the issues in a particular case." (See also 1 C.J.S. § 113 (4), p. 1375.) This appears to be sound doctrine. In harmony with it are *Goehring* v. *Rogers*, 67 Cal.App. 260, 263 [227 P. 689], wherein the Supreme Court upheld the right of each defendant to cross-examine his codefendant who had been called under section 2055, Code of Civil Procedure; *Langendorf etc. Bakeries* v. *Industrial Acc. Com.*, 87 Cal.App.2d 103, 104 [195 P.2d 887],

wherein it is said: "The denial of the right of cross-examination, both where the evidence in chief was admitted during the course of the hearing and where it was received after the hearing was closed, has been held a deprivation of due process in *Walker Min. Co. v. Industrial Acc. Com.*, 35 Cal.App.2d 257 [95 P.2d 188]; *Young v. Industrial Acc. Com.*, 38 Cal. App.2d 250 [100 P.2d 1062]; *Holmes Eureka L. Co. v. Industrial Acc. Com.*, 41 Cal.App.2d 150 [106 P.2d 23]; *Pacific Employers Ins. Co. v. Industrial Acc. Com.*, 47 Cal.App.2d 713 [118 P.2d 848]; and *Massachusetts etc. Ins. Co. v. Industrial Acc. Com.*, 74 Cal.App.2d 911 [170 P.2d 36]." Also *Wolters v. Rossi*, 126 Cal. 644, 649-650 [59 P. 143], wherein it was held that depositions taken in one of consolidated actions are admissible after consolidation with respect to the parties in all of the consolidated causes.

The mere fact of technical resting should not preclude appellant from meeting by cross-examination of witnesses or by additional evidence any proof introduced by any other party to a consolidated cause which appellant's counsel deems antagonistic to her interests and we hold that it does not. This view was presented to the trial judge by the attorney for Builders Steel who had called the particular witness.

The suggestions that "Builders Steel is not an opposite party to you" and "you only have the right of cross-examination of opposing witnesses to you in your case," and "this witness . . . is not adverse to you," do not seem determinative here. They rest upon procedural concepts which must yield to fundamental constitutional rights. In this connection respondent relies upon section 2045, Code of Civil Procedure, which seems to limit cross-examination to an adverse party: "The examination of a witness by the party producing him is denominated the direct examination; the examination of the same witness, upon the same matter, by the adverse party, the cross-examination." Appellant's counsel relies upon section 1846, which seems to extend that right to all parties: "A witness can be heard only upon oath or affirmation, and upon a trial he can be heard only in the presence and subject to the examination of all the parties, if they choose to attend and examine." It is unnecessary to decide which position is correct for we are here dealing with a fundamental right whose exercise cannot be precluded by any legislative declaration.

The error at bar is of such a nature that section 4½ of article VI of the Constitution does not cure it. (*Spector v. Superior Court*, 55 Cal.2d 839, 843-844 [13 Cal.Rptr. 189, 361

P.2d 909]; *People* v. *Elliot,* 54 Cal.2d 498, 506 [6 Cal.Rptr. 753, 354 P.2d 225]; 3 Witkin, California Procedure, § 112, p. 2285.)

Judgment reversed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied February 21, 1962, and respondent's petition for a hearing by the Supreme Court was denied March 27, 1962. Schauer, J., McComb, J., and White, J., were of the opinion that the petition should be granted.