[Civ. No. 11305.   Third Dist.   Jan. 17, 1967.]

GERALD MANES, Plaintiff and Respondent, v. CHARLES
WIGGINS, Defendant and Appellant.

Skow & Jones and William A. Ward for Defendant and
Appellant.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux
& Goldstein and Albert E. Levy for Plaintiff and Respondent.

REGAN, J.—Defendant Wiggins appeals from a judgment
of the superior court, sitting without a jury, in favor of
plaintiff Manes for damages in the sum of $1,520 and costs
of suit.

Plaintiff in his complaint alleged defendant had committed
an assault and battery upon him.  The evidence discloses
Wiggins, the owner and operator of a combination bowling
alley, restaurant and tavern, became involved in an argument
with Manes, a patron. The argument became heated—there

was swearing on both sides. Manes testified he was shoved against a cash register, causing him injury. Wiggins admits: "I walked out and got him by the arm and by the shoulder and turned him around and told him to get out, because if he didn't, I was going to deck him." Wiggins denied striking, kicking or shaking Manes. A witness corroborated Manes' story.

Wiggins' first contention is that the trial court admitted into evidence a transcript of certain criminal proceedings before the Gridley Justice Court and a docket of such proceedings as proof of unlawful assault, thus committing prejudicial error. ▮ We hold that the introduction of this record transcript was error and prejudicial under the circumstances of this case.

At the trial of the civil action the judge allowed the certified copy of the criminal file of the justice court proceedings to be marked as an exhibit and reserved the question of admissibility. In its "Memorandum of Decision" the court found the record to be "admissible in evidence of an unlawful assault."

To one unfamiliar with proceedings in a justice court the contents of the transcript would be no less than astonishing. It discloses the history of a criminal "trial" at which the defendant therein, Wiggins, was charged presumably with assault and battery. Wiggins was not present although represented by his attorney. Manes and other witnesses testified to the altercation. At the conclusion of the testimony the judge of the justice court stated:

"THE COURT: Mr. Skow, I would like to say this: I think Mr. Wiggins should have been here. In passing judgment on any person in a matter of this type, I think it is important for either you to relate it to him or the Court to require that he appear before this Court for sentencing. These conversations that one has over the telephone are never too clear how we are proceeding, but the Court has committed itself on the charge that he is to be fined in the amount of $350.00 plus the assessment which is the normal penalty for this violation. Of course, that stands.

"In addition to that, this Court is always in a position to receive complaints, sometimes formal complaints in writing, and sometimes complaints over the telephone or by patrons of the Country Kitchen, and I think that this message should be related to your client; and that is, over the years although I have not taken complaints against your client, I do feel that

the Court should have had the opportunity to explain to him my position as Magistrate in this community to protect all the people against his aggressions—and they are aggressions. This is not the end of the case.

"The court fines him in the amount of $350.00 plus the assessment, and orders that he pay it. He has posted with the Court a cash bail in the amount of $550.00. Do you have the authority to request that the Court deduct from that and return to him the balance?

"MR. SKOW: I do, and I will so request.

"THE COURT: You will so request it. I am sincere about the one thing that you better explain to Mr. Wiggins that people come to me and I always take the complaint because he is well known for his actions in his own place and other places. You may resent hearing it coming from my mouth, but that is the way I feel about it."

In its memorandum decision filed on March 3, 1965, the trial court found the record to be admissible; the judge doubted, however, that a misdemeanor conviction was entitled to the same conclusive force as a felony conviction.

"Under certain circumstances a judgment in a criminal case may be res judicata (i.e., a collateral estoppel) in a subsequent civil action involving an issue necessarily determined." (Witkin, Cal. Evidence (2d ed. 1966) The Hearsay Rule, § 604, p. 573; see *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.*, 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439] ; see also *Newman* v. *Larsen*, 225 Cal.App.2d 22 [36 Cal.Rptr. 883].) Thus, a judgment may, as a matter of substantive law, conclusively establish certain facts insofar as a party is concerned. (See California Evidence Code Manual (Cont. Ed. Bar) Judgments, art. 10, p. 251.) No California case has been found, however, applying the doctrine of collateral estoppel to judgments of misdemeanor convictions.

If a criminal judgment is the result of a contested trial on a plea of not guilty, and the conditions for application of the doctrine of collateral estoppel are not present, the majority rule, previously followed in California, excludes it as hearsay. (3 Witkin, Cal. Evidence (2d ed. 1966) The Hearsay Rule, § 604, p. 573.) The new Evidence Code, however, makes admissible a judgment of conviction of a crime punishable as a felony. (Evid. Code, § 1300, Stats. 1965, ch. 299—to become operative Jan. 1, 1967.) It should be noted that this new section applies *only* to felonies.

". . . The Model Code went so far as to allow evidence of

a misdemeanor conviction. The Uniform Rules, conceding the logic of treating all prior convictions alike, point to the danger of allowing guilty pleas in traffic cases to be used in later negligence actions. '[T]rials and convictions in traffic courts and possibly in misdemeanor cases generally, often do not have about them the tags of trustworthiness as they often are the result of expediency or compromise.' (Unif. Rule 63 (20), Comment; see also 1950 A.S. 826.)'' (Witkin, Cal. Evidence (2d ed. 1966) The Hearsay Rule, § 605, p. 574.)

If the trial court had merely allowed the judgment in the misdemeanor trial to be admitted into evidence **we** are of the opinion it would have constituted error, although not necessarily prejudicial. (Since this precise question is not before us we do not make this decision.) However, the court did more, it allowed this full transcript of testimony and then gave weight to it in its memorandum of decision.[1]

---

[1] The memorandum of decision reads:

''The question is presented by proffer of the records of the Gridley Judicial District Court whether or not in subsequent civil litigation a misdemeanor conviction is admissible in evidence of an unlawful assault. If so, is such fact *conclusively* proved—i.e., is the fact of assault res judicata between victim and a convicted assailant when the former sues the latter for damages arising out of the same incident. The question is not satisfactorily answered in California law. The *Tietelbaum* [*sic*] cases [*People* v. *Teitelbaum*], 163 CA (2) [*sic*] 184 [163 Cal.App.2d 184, 329 P.2d 157] and [*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*] 58 Cal. (2) 601 [25 Cal.Rptr. 559, 375 P.2d 439]; *Ray* v. *Jackson,* 219 ACA 40 [219 Cal.App.2d 445, 33 Cal.Rptr. 339], and *Newman* [*Newman* v. *Larsen*], 225 ACA 37 [225 Cal.App.2d 22, 36 Cal.Rptr. 883], partially answer the question and provide some rationale for a rule of evidence. Tietelbaum [*sic*] held that in subsequent civil litigation a plea of guilty to a charge of conspiracy to commit grand theft was an admission but not conclusive evidence of the facts embraced in the charge. In addition to the three tests adopted from *Bernhard* v. *Bank of America,* 19 Cal. (2) [19 Cal.2d 807, 122 P.2d 892], The *Tietelbaum* [*sic*] court in considering the results when applied to a plea of guilty noted that in such a case 'no issues have been drawn into controversy by a full presentation of the case' and that 'the plea may reflect only a compromise or a belief that paying a fine is more advantageious [*sic*] than litigation.

''In the instant case, however, the conviction did follow after a trial upon a 'Not Guilty plea'. Even though a defendant chooses to absent himself from the trial and appears only by counsel, the three tests Tietelbaum [*sic*] lays down for the application of the doctrine of collateral estoppel appear to have [been] met. However, in view of the courts' reliance upon motivations for defending a felony charge (cf. pages 606-7) it does appear doubtful that a misdemeanor conviction is entitled to the same conclusive force.

''The record of the lower court is admissible. Defendants' failure to defend is not explained by the evidence. With the other evidence in the case a preponderance exists in plaintiff's favor on the issue of assault. However, except as to the medical expenses, evidence of plaintiff's damages is not persuasive of substantial losses. He may have judgment for $1,500.00 plus medical expenses. His counsel will prepare findings accordingly.''

Most significant in the memorandum of decision are the words:

"The record of the lower court is admissible. Defendants' failure to defend is not explained by the evidence. *With the other evidence in the case a preponderance exists in plaintiff's favor on the issue of assault.*" (Italics added.) It appears clear that the trial court found the preponderance only when the transcript evidence was considered along with the other evidence at the trial.

We note the holding in *People* v. *Van Gorden,* 226 Cal. App.2d 634, 638 [38 Cal.Rptr. 265]: "In the instant case, the rules restated in *Ehrenreich* v. *Shelton,* 213 Cal.App.2d 376, 378-379 [28 Cal.Rptr. 855], are particularly apposite:

" 'It is a general rule, of course, that the judgment of a trial court will not be disturbed even though in arriving at that judgment the trial court may rely upon erroneous reasoning. [Citation.] It is held in this state that although the reasons reflected in an opinion of the trial court are not ordinarily effective to disturb the final judgment, nevertheless the appellate court may inspect that opinion in order to determine the processes of reasoning by which the trial court arrived at the result. [Citations.] In a number of cases, however, it has been held that where the record reflects that in arriving at the result of which appellant complains, the trial court relied upon erroneous reasoning and except for that reliance would probably not have reached such result, then a judgment may properly be reversed. [Citations.]' "

Having found prejudicial error that requires a reversal, it is unnecessary to comment on the additional contentions of appellant Wiggins.

The judgment is reversed.

Pierce, P. J., concurred