[No. D001846. Fourth Dist., Div. One. Oct. 23, 1985.]

IRENE MUELLER et al., Plaintiffs and Appellants, v.
J. C. PENNEY COMPANY, INC., et al., Defendants and Respondents.

**[Certified for partial publication.[1]]**

714

## COUNSEL

Ralph T. Evans and Frank Marchuk for Plaintiffs and Appellants.

Morgan, Wenzel & McNicholas, Richard J. Murphey and Patrick C. Quinlivan for Defendants and Respondents.

## OPINION

LEWIS, J.—Irene Mueller[2] and her husband Frank Marchuk appeal a judgment favoring J. C. Penney Company (Penney) and its employee Carol Manstrom in their consolidated assault, battery and loss of consortium action. Among other things, Irene contends the court improperly applied collateral estoppel to her misdemeanor conviction for assault, battery and petty theft and Frank, in propria persona at trial, contends the court improperly prevented him from examining any witnesses. We affirm. We partially publish this case because we conclude a misdemeanor conviction can have collateral estoppel effect on the facts and hold the court's refusal to permit Frank to examine witnesses is harmless error under the unique facts in this case.

In January 1979, Irene left Penney with unpaid cosmetics in her purse. Manstrom, Penney's plain clothes security guard, followed Irene out the store, identified herself as a security officer and told Irene to accompany her back to Penney. Irene refused and continued walking away. Manstrom grabbed Irene's arm. Irene started hitting, kicking and striking Manstrom with her purse. Irene bit Manstrom on the arm and pulled her hair.[3] Two passersby intervened, stopping the fighting. Irene and Manstrom returned to Penney. There, police arrested Irene.

---

[2]Irene died on May 23, 1984, during the pendency of this appeal. We refer to her by name in the present tense for convenience. Attorney for Irene has served notice that Frank Marchuk, administrator of Irene's estate, was ordered substituted in Irene's stead as plaintiff on October 15, 1985, by the Superior Court of Orange County.

[3]Irene's version is very different. She testified Manstrom did not identify herself as a security guard and attacked her, pulling her clothing and hair. Irene denied biting, pushing, or kicking Manstrom. However, we recite the facts in the light most favorable to the judgment. (See *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

Irene sued Penney and Manstrom for assault, battery, false imprisonment and defamation. Frank, in propria persona, separately sued these same defendants for loss of consortium. The court consolidated the two cases.[4] Manstrom brought a cross-complaint against Irene for assault and battery.

While these civil actions were pending, Irene was convicted of assault, battery and petty theft (based on the incident at Penney) in a municipal court jury trial. Irene testified and was represented by counsel at this trial. The court sentenced Irene to three years informal probation.

Irene appealed her criminal conviction to the appellate division of the Orange County Superior Court, claiming police suppressed or destroyed evidence (a business card) which would have identified an exculpatory witness. The court affirmed the conviction. Irene next petitioned the Court of Appeal on the same grounds. The court denied her petition. Irene petitioned the California Supreme Court for a writ of mandate or prohibition, on the ground she was denied due process by the police officer's destroying "a material piece of evidence." The state Supreme Court denied the petition. Irene petitioned the United States Supreme Court for a writ of certiorari, which was denied. She petitioned the United States District Court for a writ of habeas corpus on the same ground. The District Court denied the petition. During the pendency of the present appeal in the civil action, the Ninth Circuit Court of Appeals denied Irene a certificate of probable cause. (See Fed. Rule App. Proc., rule 22(b).)

On March 28, 1983, the presiding judge assigned the civil case for trial. The court denied Frank's motion for a continuance. At this time neither Frank nor Irene made any claim the trial judge was biased or prejudiced. At the afternoon session before jury selection, Frank and Irene presented a peremptory challenge under Code of Civil Procedure section 170.6.[5] The court denied the motion as untimely.[6]

---

[4]"[T]he preferred method for asserting a claim of loss of consortium [is] to join such a cause of action in the initial pleading with the other spouse's cause of action for negligent or intentional injury." (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408, fn. 29 [115 Cal.Rptr. 765, 525 P.2d 669].)

[5]All statutory references are to the Code of Civil Procedure unless otherwise specified. Section 170.6 states, in part:

"(1) No judge . . . shall try any civil . . . action . . . when it shall be established as hereinafter provided that such judge . . . is prejudiced against any party . . . .

"(2) . . . If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial."

[6]In "an abundance of caution," the court treated Frank's motion as one for cause. However, Frank later withdrew the challenge, stating on the record, "I wish to withdraw the motion for bias and prejudice against the presiding judge."

In other pretrial matters, the court denied Frank the opportunity to examine any witnesses. Stating Frank's complaint for loss of consortium was "piggyback" to Irene's action, the court ruled "the only participation that Mr. Marchuk will be permitted as an attorney, will be at the appropriate time when he wishes to testify concerning his own damages." Despite Frank's argument that "my whole case is based upon the extent of impeachment" and "only I, after four years have developed the evidence to cause the impeachment of the defendants," the court ruled Frank could not examine any witnesses.

Finally, the court gave collateral estoppel effect to Irene's criminal conviction for petty theft, assault and battery. Accordingly, having conclusively determined Irene stole cosmetics from Penney and battered Manstrom, the court limited the issues to whether Manstrom used reasonable force and reasonably detained Irene. Regarding Manstrom's cross-complaint, the court told the jury Irene battered Manstrom, and the only issue was the extent of Manstrom's injuries, if any.

The court's initial patience with Irene's attorney wore thin as the six-day trial progressed.[7] On the third day of trial, frustrated by counsel's examination of an expert, the court asked the hypothetical question itself. After the witness' response, the court said, "I might tell you the last time I tried somebody's case for them, they lost." On day five, counsel sought to bring out a discrepancy between Manstrom's testimony and a police officer's testimony concerning the whereabouts of the lost witness. Although Manstrom had recently testified she saw the officer talk to this witness, counsel tried to get Manstrom to change her story. Limiting Irene's attorney's cross-examination, the court said, "There is not going to be a Perry Mason thing." Counsel did not object to any such remarks.

Following the verdict, the court entered judgment against Irene and Frank on their respective complaints. The jury awarded Manstrom $20,000—$5,000 compensatory and $15,000 punitive damages.

## I

■ Collateral estoppel bars relitigation of an issue decided at a previous proceeding " 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous

---

[7] In opening statement, Irene's attorney said, "She [Irene] briefly tried to go back to teaching . . . but found any work more than she could bear. Perhaps she was too honest, more or less sensitive because of this incident and the cruel attack and accusations have destroyed her." Responding to Penney's objection that the statement was argumentative, the court stated, "It is his first case. We are going to give him a few extra."

[proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].) █ Here, the issues necessarily decided in the criminal case—whether Irene stole Penney's cosmetics and battered Manstrom—are identical to issues sought to be litigated in Irene's civil case. She does not contend otherwise. Moreover, the criminal case is a final judgment on the merits. For purposes of collateral estoppel, a judgment free from direct attack is a final judgment. (*People* v. *Sims, supra,* 32 Cal.3d 468, 486; *Morris* v. *McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964, 973 [132 Cal.Rptr. 37].) Here, Irene exhausted her direct attacks and her petitions to the California and United States Supreme Courts were denied. Her pending habeas corpus petition before the Ninth Circuit Court of Appeals does not change this result. To be final for purposes of collateral estoppel, the decision need only be immune, as a practical matter, to reversal or amendment. (See *Miller Brewing Co.* v. *Jos. Schlitz Brewing Co.* (7th Cir. 1979) 605 F.2d 990, 996.) A significant factor in determining whether a judgment is sufficiently final for collateral estoppel purposes is whether the decision was in fact reviewed on appeal. (Rest.2d Judgments, § 13, com. g.) Here, Irene's conviction was reviewed on appeal. It is a final judgment. Last, the party against whom collateral estoppel is asserted (Irene) was a party to the criminal action.

Nevertheless, Irene contends the court should not have given collateral estoppel effect to her criminal conviction because (1) her conviction is "subject to collateral attack," (2) her conviction is for misdemeanors, and (3) applying collateral estoppel here would "defeat the ends of justice."

█ Where, as here, successive proceedings are different in nature, one criminal and one civil, collateral estoppel may still bar relitigation of issues decided in the first action. (*People* v. *Sims, supra,* 32 Cal.3d 468, 482.) However, "a criminal judgment that is subject to collateral attack on the ground, for example, that it was obtained through the knowing use of perjured testimony [citations], or suppression of evidence [citation] . . . is not res judicata in a subsequent action." (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439].)

█ At the time of Irene's civil trial, her petition for habeas corpus had been denied by the United States District Court. Her action before the Court of Appeals was pending. Asserting these facts make her judgment "subject to collateral attack," Irene contends under *Teitelbaum Furs, supra,* the court should not have applied collateral estoppel.

If Irene's interpretation of *Teitelbaum Furs* were adopted, criminal judgments could have collateral estoppel effect only when every conceivable

collateral attack had been exhausted. This is not what the *Teitelbaum Furs* court intended. Under *Teitelbaum Furs,* a judgment is "subject to collateral attack" where the party advances some meritorious grounds that would sustain such an attack. (See 58 Cal.2d 601, 607.) Here, Irene offers no such grounds. Several courts, including the California Supreme Court, have denied her relief based on any due process violation in her criminal trial. The United States Supreme Court has denied certiorari. The Ninth Circuit Court of Appeals has denied collateral relief. Despite Irene's bold statements in her brief that her conviction occurred "only as a result of extensive perjury" and "the suppression of crucial evidence," the undisputed facts are that, beginning with her appeal, several courts have considered these assertions and found them meritless. Accordingly, these grounds will not sustain a collateral attack. (See *Teitelbaum, supra,* 58 Cal.2d at p. 607.) It is difficult to imagine a judgment less subject to collateral attack. The *Teitelbaum Furs* limitation is inapplicable in this case.

In *Teitelbaum Furs* and later cases applying collateral estoppel from criminal to civil proceedings, the criminal conviction has been a felony. (See, e.g., *Teitelbaum Furs, supra,* 58 Cal.2d 601, 606; *Newman v. Larsen* (1964) 225 Cal.App.2d 22 [36 Cal.Rptr. 883].)[8] Here, Irene's conviction is for misdemeanor assault, battery and petty theft. She contends applying collateral estoppel is improper under these circumstances because misdemeanor convictions do not have the same degree of reliability as do more serious felony cases. Although in other situations this argument may have force (see *Manes v. Wiggins, supra,* 247 Cal.App.2d 756, 759), we disagree that it applies in Irene's case. (See *Crowall v. Heritage Mut. Ins. Co.* (1984) 118 Wis.2d 120 [346 N.W.2d 327, 330].)

■ Collateral estoppel may be applied only if due process requirements are satisfied. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) The party sought to be estopped must have had a fair opportunity to pursue his or her claim the first time. (*Blonder-Tongue Laboratories, Inc. v. University Foundation* (1971) 402 U.S. 313, 333 [28 L.Ed.2d 788, 802, 91 S.Ct. 1434].) This includes a consideration of the incentive to litigate in the first action. (*Ibid.*) However, "[t]he analysis should be made on a case-by-case basis with the court look-

---

[8]"No California case has been found . . . applying the doctrine of collateral estoppel to judgments of misdemeanor convictions." (*Manes v. Wiggins* (1967) 247 Cal.App.2d 756, 758 [56 Cal.Rptr. 120].) In *Manes,* the conviction stemmed from a justice court trial which Wiggins, the accused, did not even attend. Unlike Wiggins, here Irene attended and testified at her trial, thoroughly litigating the issues. "The rule of *Teitelbaum Furs* [citation] could logically be applied to misdemeanor as well as felony convictions. However, practical considerations make this undesirable." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgments, § 185, p. 3327.) For reasons discussed later, we disagree with Witkin on the unique facts of Irene's case.

ing at the actions taken to defend the case and not at the potential penalties." (*Crowall* v. *Heritage Mut. Ins. Co., supra,* 346 N.W.2d 327, 331.)

 Here, Irene thoroughly litigated her criminal action. She was represented by an attorney, had a jury trial and testified in her own behalf. Her postconviction direct and collateral attacks were relentless. Irene had her day in court and received the benefits of "rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt . . . . Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards." (*Teitelbaum Furs, supra,* 58 Cal.2d 601, 606.) Misdemeanor convictions, *in general,* may lack the reliability of felony convictions because misdemeanor defendants do not as thoroughly litigate their cases.[9] However, on this record there is no reason to indulge in this assumption when the facts clearly show Irene's incentive and thorough attempts to be cleared of her assault, battery and petty theft charges.[10] The court properly applied collateral estoppel.

Asserting her conviction was obtained by "fraud, perjury, attempted introduction of false evidence and the State's suppression of vital defense evidence," Irene contends collateral estoppel should not be applied because

---

[9]We distinguish two situations to make our holding clear. Here, Irene pleaded not guilty and a jury found her guilty beyond a reasonable doubt. A plea of guilty does not draw any issues into controversy and does not support the use of collateral estoppel. (*Teitelbaum Furs, supra,* 58 Cal.2d at pp. 605-606.) Moreover, an acquittal cannot be asserted as collateral estoppel in a subsequent civil case because of the difference in degree of proof. (See *People ex rel. Gow* v. *Mitchell Brothers' Santa Ana Theater* (1980) 101 Cal.App.3d 296, 306 [161 Cal.Rptr. 562].) Last, here collateral estoppel applies from a criminal to a civil case. It would be inappropriate to apply the doctrine if the burden of proof were lesser in the first action than in the second. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgments, § 186, p. 3327.)

[10]Citing Evidence Code section 1300, making evidence of felony convictions not inadmissible by the hearsay rule, Irene argues only felony convictions can be used as a bar in later litigation. This hearsay exception is based on the reliability of felony convictions. "The seriousness of the charge assures that the facts will be thoroughly litigated." (Cal. Law Revision Com. com. to Evid. Code, § 1300.) However, this rule of evidence is inapplicable here where the substantive effect of using a conviction as collateral estoppel is the issue. "Of course, a judgment may, as a matter of substantive law, conclusively establish certain facts insofar as a party is concerned. [Citing *Teitelbaum Furs.*] The sections . . . do not purport to deal with the doctrines of res judicata and estoppel by judgment. These sections [Evid. Code, § 1300] deal only with the evidentiary use of judgments in those cases where the substantive law does not require that the judgments be given conclusive effect." (Cal. Law Revision Com. com. to Evid. Code, § 1300.) Accordingly, we reject Irene's argument Evidence Code section 1300 precludes giving collateral estoppel effect to her conviction. (See *Crowall* v. *Heritage Mut. Ins. Co., supra,* 346 N.W.2d 327, 330, fn. 4; Vestal, *Issue Preclusion and Criminal Prosecutions* (1980) 65 Iowa L.Rev. 281, fn. 1.) Having determined on this record Irene fervently litigated the criminal case, there is no reason to apply the unstated policy behind Evidence Code section 1300 that misdemeanor charges will not be thoroughly litigated.

injustice would result. Irene's unsuccessful direct and collateral attacks belie her premise. The court properly applied collateral estoppel.

II-III*

. . . . . . . . . . . . . . . . . . . . . . . .

IV

Frank Marchuk, Irene's husband, filed a separate action for loss of consortium arising from Irene's injury. Although Frank's and Irene's actions were consolidated, Frank continued to represent himself at trial. The court permitted Frank to make an opening statement, testify about his damages, and give closing argument. However, the court prohibited him from examining or cross-examining any witness. ▮ Frank correctly contends the court improperly denied him his right to examine witnesses.

In a consolidated action, the court cannot completely deny the right of a party to examine a witness. (*McCarthy* v. *Mobile Cranes, Inc.* (1962) 199 Cal.App.2d 500, 507 [18 Cal.Rptr. 750].) When actions are consolidated, as here, no merger of the action results; each action retains its separate identity and no increase, diminution, or change in the litigants' rights can occur. The purpose of consolidation is merely to promote trial convenience and economy. (*Wouldridge* v. *Burns* (1968) 265 Cal.App.2d 82, 86 [71 Cal.Rptr. 394]; see *Simon* v. *Carroll* (1954) 241 Minn. 211 [62 N.W.2d 822, 827].) The interests of justice are best served by permitting to all parties the right of cross-examination of any witness called. This "salutary rule should not be denied to the parties to actions consolidated for the purpose of being tried as a single action." (*Lamborn* v. *Czarnikow-Rionda Co.* (1929) 227 App.Div. 72 [237 N.Y.S. 69, 71].) Contrary to Penney's contention, Frank had to show both damages to himself *and* a tortious injury to Irene. (*Rodriguez* v. *Bethlehem Steel Corp.*, *supra*, 12 Cal.3d 382, 408; see BAJI No. 14.40.) He should have been permitted to establish this tortious injury to Irene by cross-examining witnesses.[11] ▮ Although the court erroneously denied Frank this right to examine witnesses, ironically the error is harmless in the unique circumstances of this case.

---

*See footnote 1, *ante,* page 713.

[11]We emphasize the court erred in *completely* denying Frank his right as a party to cross-examine witnesses. The court retains broad discretion to limit the *extent* and areas of any cross-examination. (See *McCarthy* v. *Mobile Cranes, Inc.*, *supra*, 199 Cal.App.2d 500, 507.) Moreover, this error does not prejudice Irene in her own action for her injuries. She was represented by counsel who fully examined the witnesses.

Under the discussion preceding this part, we affirm the judgment against Irene. If we reverse the judgment against Frank's consortium claim, the question presented would be whether he could maintain a separate action for loss of Irene's consortium after Irene's action for her injuries resulted in a judgment adverse to her claim. Finding such an action would be barred by collateral estoppel, we find the error harmless in this case.

Irene fully litigated her claim for damages for personal injury against Penney and Manstrom. The verdict favoring Penney in Irene's case establishes Penney is not liable for her injuries. If Penney is not liable for Irene's injuries, how can it be liable to Frank for loss of his wife's consortium? It cannot.

Collateral estoppel bars relitigation of an issue if the issue is necessarily decided at the previous proceeding; the previous proceeding resulted in a final judgment on the merits; and the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding. To prevail on his consortium action, Frank must show liability (Penney's tortious injury to Irene) and damages. Liability, an issue in this civil case, has necessarily been decided adversely to Irene. Moreover, in any subsequent action for loss of consortium, Irene's action against Penney would be a final judgment on the merits. Thus, Frank is barred by the adverse determination against Irene if he is in privity with Irene in her action against Penney.

Frank is in privity with Irene in her action against Penney. ■ Privity refers to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify applying collateral estoppel. (*People* v. *Sims, supra,* 32 Cal.3d 468, 486-487.) Under California law, spouses are in privity with each other where the cause of action in the prior litigation was "community in nature" and the "proceeds of any judgment that might have been recovered . . . would have belonged to both husband and wife, as community property." (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 321 [202 P.2d 73, 6 A.L.R.2d 461], cited with approval in *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 875.)[12]

---

[12]In *Zaragosa,* a defense verdict in an action brought by husband for his own personal injuries estopped wife from relitigating the issues of the defendant's negligence in a later action brought by her for her own injuries suffered in the same accident. The *Zaragosa* court, under then existing Civil Code section 162, characterized the damages recovered for personal injuries to husband or wife during marriage as community property and characterized the cause of action "to whatever extent [it] may constitute property, [as] community property." (33 Cal.2d at pp. 318-321.) "Since the husband's action had also been for the benefit of the community, the wife was regarded as having been in privity in that proceeding, and estopped as to all the issues there involved." (Annot., Judgment in Personal Injury

■ Here, at the time of the incident at Penney, January 25, 1979, Civil Code sections 5126 and 5110 made personal injury damages from third parties community property under the facts of this case.[13] Accordingly, Irene and Frank were in privity with respect to her action against Penney.[14] Because Frank would be collaterally estopped from proving an essential element of his consortium cause of action, there is no miscarriage of justice (Cal. Const., art. VI, § 13) in affirming the judgment respecting his loss of consortium cause of action.

V-VI*

. . . . . . . . . . . . . . . . . . . .

Judgment affirmed.

Wiener, Acting P. J., and Adams, J.,† concurred.

Appellants' petition for review by the Supreme Court was denied February 13, 1986.

---

Action by One Spouse as Res Judicata Against or For Other Spouse, Where Cause of Action Was Community Property (1949) 6 A.L.R.2d 472.) The 1949 version of Civil Code section 162 states, "All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property." Thus, the court characterized Zaragosa's cause of action as community property because not enumerated as separate property. Then existing Civil Code section 164 states, "All other property acquired after marriage by either husband or wife . . . is community property."

[13]Then applicable Civil Code section 5126 (Stats. 1972, ch. 905) states, in part:

"(a) All money or other property received by a married person in satisfaction of a judgment for damages for personal injuries or pursuant to an agreement for the settlement or compromise of a claim for such damages is the separate property of the injured person if such money or other property is received as follows:

"(1) After the rendition of a decree of legal separation or a final judgment of dissolution of a marriage.

"(2) While either spouse, if he or she is the injured person, is living separate from the other spouse.

"(3) After the rendition of an interlocutory decree of dissolution of a marriage."

Then applicable Civil Code section 5110 (Stats. 1977, ch. 332) states, in part: "Except as provided in Section 5107, 5108 and 5109 . . . all personal property . . . acquired during marriage . . . is community property."

Accordingly, because Irene and Frank were married in January 1979 and the damages, if any, would not be separate property under Civil Code section 5126, the damages, if any, would be community property under section 5110.

[14]Other jurisdictions are split on this issue. Compare *Laws* v. *Fisher* (Okla. 1973) 513 P.2d 876 (finding identity of parties between husband and wife in attempt to bring subsequent consortium action) with *Stapleton* v. *Palmore* (1982) 162 Ga.App. 525 [291 S.E.2d 445] (no privity).

*See footnote 1, *ante,* page 713.

†Assigned by the Chairperson of the Judicial Council.