[No. B009187. Second Dist., Div. Three. May 19, 1986.]

TERRY LEE LEADER, Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, Marvin Goldsmith, Senior Assistant Attorney General, Robert H. Francis and Mark A. Weinstein, Deputy Attorneys General, for Defendants and Appellants.

James E. Blatt for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendants and appellants, the State of California (State), and California Highway Patrol (CHP) Officer Grantley Vaughn (Vaughn)

appeal from a judgment in favor of plaintiff and respondent, Terry Lee Leader (Leader).

Because due process requirements were met at the time of Leader's prior misdemeanor criminal convictions, he is collaterally estopped to deny he battered an officer and resisted arrest in his civil cause of action. Therefore, he is limited in the civil case to litigating the issue of whether the officers used unreasonable force in the course of his arrest.

Also, the misdemeanor convictions are admissible under Evidence Code section 780, subdivision (i) (section 780, subdivision (i)) to prove the nonexistence of the contrary facts to which Leader testified in the civil case.

Therefore, the judgment is reversed.

PROCEDURAL AND FACTUAL BACKGROUND

On February 5, 1978, Leader was stopped in the Saugus area for investigation as to whether he was driving under the influence by Vaughn and CHP Officer Bavetta (Bavetta), and was subsequently arrested. On February 6, 1978, a criminal complaint with four counts was filed against Leader. A three-day jury trial held in February 1979 in the Newhall Judicial District resulted in Leader's conviction of the misdemeanors of resisting arrest and battery of a police officer and not guilty verdicts as to the other criminal charges.

On January 5, 1979, Leader filed a complaint for damages for assault and battery against the State, the CHP, and Vaughn, alleging the officers used excessive force to arrest him based on the same February 5, 1978, incident. The case went to trial before a jury in December 1983 and January 1984, and Leader was awarded a reduced judgment against the State and Vaughn for $90,000.

Evidence at the civil trial was in sharp conflict in certain respects but some version of the following events took place.

On February 4, 1978, Leader and his wife left their house for a ride on his motorcycle. They spent the entire day and into the night visiting friends and a number of bars, wherein Leader consumed a total of seven to eight beers.

About 1:30 the next morning, friends took Leader's wife home because the weather had turned wet and cold. En route to his home, Leader drove his motorcycle along Soledad Canyon Road. At the intersection of Camp

Plenty, he went through either a yellow or a red light and was or was not weaving over the double line, but was eventually pulled over by the two CHP officers. He refused a field sobriety test for driving under the influence and was arrested.

Leader claimed he was cooperative with the officers during the arrest procedure, but "out of the blue," he was struck several times with a baton and lost consciousness.

Vaughn's version indicated Leader was verbally abusive, hit the officers, resisted his arrest, and was finally subdued with a misplaced blow over the right eye by Vaughn's baton. He was assisted to the ground and thereafter attended by paramedics.

As a result of Leader's testimony at the civil trial, certified copies of Leader's misdemeanor convictions were offered into evidence. A hearing was held on their admissibility at which time it was argued the convictions could be used to impeach Leader under section 780, subdivision (i) and, in addition, Leader should be collaterally estopped to deny the issues already necessarily decided against him in the prior criminal trial.

Leader's counsel countered that Evidence Code section 787 prohibited impeachment by a misdemeanor, and even if the convictions were admissible, such evidence should be excluded as too prejudicial under Evidence Code section 352 (section 352).

The trial court refused the introduction of the misdemeanor convictions. A jury verdict was returned in favor of Leader for $175,000 and against the State and Vaughn. A motion for a new trial was made which the trial court conditionally granted on the grounds the verdict was excessive. Leader thereafter accepted a reduced verdict of $90,000 and the motion was denied.

The instant appeal followed.

## CONTENTIONS

The State and Vaughn contend the misdemeanor convictions should be admissible in the civil action: (1) to collaterally estop relitigation of the issues previously decided adversely to Leader in the criminal action; and (2) to impeach Leader's testimony under section 780, subdivision (i).

## DISCUSSION

1. *Leader's misdemeanor convictions can be used for purposes of collateral estoppel in the subsequent civil action.*

a. *Application of doctrine well established where conviction is a felony.*

Courts have consistently expressed agreement with the views that "'. . . when one is convicted of a felony and subsequently attempts to benefit from the commission, the record of his guilt should be a bar to his recovery.'" (*Hurtt* v. *Stirone* (1965) 416 Pa. 493 [206 A.2d 624, 626], cert. den. 381 U.S. 925 [14 L.Ed.2d 684, 85 S.Ct. 1561].) "Collateral estoppel has been held to bar relitigation of an issue decided at a previous trial if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial." (*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].)

*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439], cert. den. (1963) 372 U.S. 966 [10 L.Ed.2d 130, 83 S.Ct. 1091]) is the leading case in this field in California. In *Teitelbaum,* the plaintiff corporations brought a civil action to recover damages under a contract of insurance with defendant insurers. (*Id.,* at p. 603.) A prior criminal proceeding resulted in Teitelbaum, the president of the plaintiff corporations, being convicted of the *felonies* of conspiring to commit grand theft, attempted grand theft, and filing a false insurance claim. (*Ibid.*)

In reversing the judgment for the plaintiff corporations in the civil action, the *Teitelbaum* court applied the doctrine of collateral estoppel. It held the doctrine precludes relitigation of any issue necessarily decided in prior litigation as to parties or their privies if the same issue is involved in a subsequent lawsuit on a different cause of action. (*Id.,* at p. 604.)

*Teitelbaum* has been extensively followed. (See, e.g., *Newman* v. *Larsen* (1964) 225 Cal.App.2d 22 [36 Cal.Rptr. 883]; *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931 [84 Cal.Rptr. 773]; *People* v. *Taylor, supra,* 12 Cal.3d 686; *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321]; *Miller* v. *Superior Court* (1985) 168 Cal.App.3d 376 [214 Cal.Rptr. 125].)

Support for the use of felony criminal convictions for collateral estoppel purposes likewise exists in foreign jurisdictions,[1] and is recognized by the respected treatise author Dean McCormick. On this subject, and the expanded use of other than felony convictions, he wrote: "There is, however, a growing tendency to admit a prior conviction for a *serious criminal offense* in a subsequent civil action. . . . The tendency is most noticeable when the judgment is offered in a subsequent civil case in which the convicted defendant seeks affirmatively to benefit from his criminal offense. The strong desire to prevent this result undoubtedly has influenced courts to permit the introduction of the judgment of conviction, [fn. omitted] and some courts also hold that the judgment is conclusive proof that the party committed the relevant acts with the state of mind required for criminal liability. [Fn. omitted.]" (McCormick on Evidence (2d ed. 1980) § 318, pp. 739-740, italics added.)

### b. *Growing recognition and use of misdemeanor convictions.*

On this issue McCormick concluded "[t]he trend in this area is towards broader admissibility. The Model Code of Evidence provides for the admissibility of a judgment 'adjudging a person guilty of a crime or a *misdemeanor*' to prove facts recited therein 'and every fact essential to sustain the judgment. [Fn. omitted.]'" (McCormick on Evidence, *supra*, at p. 741, italics added.)

### (1) *Prior California law.*

Before 1985, the only California case we have discovered on the issue of admissibility of misdemeanors is *Manes* v. *Wiggins* (1967) 247 Cal.App.2d 756 [56 Cal.Rptr. 120]. In a criminal proceeding, Wiggins, the owner and operator of a combination bowling alley, restaurant and tavern, was alleged to have had an altercation with a customer, and was convicted of misdemeanor assault and battery. (*Id.*, at pp. 756-757.)

In a subsequent tort suit based on the same incident, Manes, the patron, brought a civil action for assault and battery against Wiggins. (*Id.*, at p. 756.) The trial court admitted Wiggins' prior misdemeanor convictions, and allowed the full transcript of the testimony of the criminal trial into evidence and gave it weight in the memorandum of decision. (*Id.*, at p. 759.)

---

[1]Thau, *Collateral Estoppel and the Reliability of Criminal Determinations: Theoretical, Practical, and Strategic Implications for Criminal and Civil Litigation* (1982) 70 Geo. L.J. 1079, 1086-1095.

In reversing, the *Manes* court recognized no California case had ever applied the doctrine of collateral estoppel to misdemeanor convictions. (*Id.,* at p. 758.) The basis for that rule is that like convictions in traffic courts, those "'. . . in misdemeanor cases generally, . . . do not have about them the tags of trustworthiness as they often are the result of expediency or compromise.'" (*Id.,* at p. 759.) Consistent with this rationale, Wiggins' criminal conviction stemmed from a justice court trial which Wiggins, the accused, although represented by counsel, did not even attend. (*Id.,* at p. 757.)

While the *Manes* court did not decide whether the admission of the misdemeanor convictions into evidence was necessarily prejudicial, the trial court's allowing the full criminal transcript and giving it weight in its decision compelled reversal. (*Id.,* at pp. 759-760.)

(2) *Other jurisdictions' rationale persuasive.*

Several states have rejected the arbitrary distinction between felonies and misdemeanors, and rather have determined whether the prior offense was of a "serious" nature.

The Alaska Supreme Court in *Scott* v. *Robertson* (Alaska 1978) 583 P.2d 188, after reviewing a number of pertinent cases, developed three conditions for admissibility of a misdemeanor conviction as follows: (1) The prior conviction is for a serious criminal offense; (2) the defendant actually had a full and fair hearing; and (3) it is shown that the issue on which the judgment is offered was necessarily decided in the previous trial. (*Id.,* at pp. 191-192.)

In applying these conditions, the *Scott* court found the plaintiff's prior conviction for driving under the influence, although *not a felony,* could be used as collateral estoppel to prove negligence in a subsequent civil suit. (*Id.,* at pp. 192-193.) However, the court also observed, "[w]hile a conviction for driving while under the influence of intoxicants, such as in this case, can be conclusive as to the fact of driving while intoxicated, *it does not foreclose the jury's ultimate determination of civil liability.*" (*Id.,* at p. 193, italics added.)

In the Wisconsin case of *Crowall* v. *Heritage Mut. Ins. Co.* (1984) 118 Wis.2d 120 [346 N.W.2d 327, 329], after an insured driver had been convicted of *operating* a vehicle while under the influence of alcohol, he brought a subsequent civil action against his insurer for refusing to pay his injuries because the policy did not cover damages to *owner-drivers.* The *Crowall* court affirmed the trial court in rejecting the driver's argument that he did

not have sufficient incentive to defend his criminal case because it was only a misdemeanor and therefore the issue as to who was driving the vehicle was not fully litigated. (*Id.,* at p. 330.)

While thus ruling, the *Crowall* court cautioned in *some* cases it would be unfair to give conclusive weight to the prior criminal conviction as the motive to defend certain misdemeanors is minimal or nonexistent because the time, energy and resources to defend are disproportionate to the penalty. (*Ibid.*) It went on to hold whether collateral estoppel should be applied must necessarily be decided on a *case-by-case basis* by analyzing what efforts were in fact undertaken to defend the action. It noted that at the criminal trial, Crowall was represented by an attorney, testified on his own behalf, presented witnesses, and cross-examined state witnesses. (*Id.,* at p. 331.)

(3) *The Mueller case.*

*Mueller* v. *J. C. Penney Co.* (1985) 173 Cal.App.3d 713, 718-719 [219 Cal.Rptr. 272], reiterated the pronouncement of *Teitelbaum* holding collateral estoppel applies (1) if an issue decided at the previous proceeding is identical to one sought to be relitigated; (2) if the previous action resulted in a final judgment on the merits; and (3) if the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior action.

Mueller was arrested for shoplifting and filed a civil action against the department store and its employee for, inter alia, assault and battery arising from the incident; her husband filed an action for loss of consortium. While the civil action was pending, Mueller was convicted of misdemeanor assault, battery and petty theft based on the shoplifting incident. (*Id.,* at p. 717.) Having conclusively determined Mueller battered the security guard, the civil trial court limited the issues to be tried to whether the guard used *reasonable force and reasonably detained* Mueller. (*Id.,* at p. 718.)

The *Mueller* court affirmed, citing *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, for the propriety of allowing a prior criminal conviction for collateral estoppel purposes in a subsequent civil action arising from the same facts. (*Mueller* v. *J. C. Penney Co., supra,* at pp. 719-720.) *Mueller* recognized that in *Teitelbaum* and its progeny the criminal convictions were for felonies and it expressly rejected *Manes'* application to the case before it. The *Mueller* court cited to *Crowall* as providing support for a case-by-case analysis before determining whether a misdemeanor conviction can have a collateral estoppel effect on the facts. The court noted Mueller had been represented by an attorney, had a trial, testified in her own behalf and her post conviction direct and collateral

attacks were "relentless." (*Mueller* v. *J. C. Penney Co.*, *supra*, at pp. 720, fn. 8, 721.)

c. *Case-by-case analysis necessary.*

(1) *Safeguard standards.*

■ *Scott*, *Crowall* and *Mueller* provide standards for the use of misdemeanor convictions for collateral estoppel purposes in subsequent civil trials, to be determined on a case-by-case basis.

*Scott* and *Crowall* direct that the prior conviction must have been for a *"serious" offense* so that the defendant was motivated to fully litigate the charges. (*Scott* v. *Robertson*, *supra*, 583 P.2d at p. 192; *Crowall* v. *Heritage Mut. Ins. Co.*, *supra*, 346 N.W.2d at p. 330.) When the crime is of the nature of a traffic offense, the accused may plead guilty merely because the defense is more trouble than the resulting penalty, and thus such a conviction would not allow for application of the doctrine.[2] (*Ibid.*; *Hurtt* v. *Stirone*, *supra*, 206 A.2d at p. 627; *Stagecrafters' Club* v. *District of Columbia Division* (D.D.C. 1953) 111 F.Supp. 127, 129.) *Scott* suggests any offense punishable by imprisonment should be considered a serious offense. (*Scott* v. *Robertson*, *supra*, 583 P.2d at p. 192; fn. 17.)

*Scott*, *Crowall* and *Mueller* require that a *full and fair misdemeanor trial* actually occur to prevent convictions of doubtful validity being used. (*Scott* v. *Robertson*, *supra*, 583 P.2d at p. 192; *Crowall* v. *Heritage Mut. Ins. Co.*, *supra*, 346 N.W.2d at p. 330; *Mueller* v. *J. C. Penney Co.*, *supra*, 173 Cal.App.3d at pp. 720-721.) The cases stress that a criminal proceeding has a higher standard of proof than a civil one; therefore, it is particularly appropriate to apply a criminal conviction to a civil action, while the reverse would not be true. (*Scott* v. *Robertson*, *supra*, at pp. 192-193; *Crowall* v. *Heritage Mut. Ins. Co.*, *supra*, at p. 331, fn. 5; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*, *supra*, 58 Cal.2d at p. 606.)

The last criterion is whether the *issue* on which the prior conviction is offered *must of necessity have been decided* at the criminal trial. (*Scott* v. *Robertson*, *supra*, 583 P.2d at p. 192.)

---

[2]Vehicle Code section 40834 specifically holds: "A judgment of conviction for any violation of this code or of any local ordinance relating to the operation of a motor vehicle . . . shall not be res judicata or constitute a collateral estoppel of any issue determined therein in any subsequent civil action."

(2) *Application here.*

The safeguard standards are met in this case. The crimes charged of which Leader was convicted, battery against a police officer and resisting arrest, could require incarceration and are "serious."[3]

The criminal charges were thoroughly litigated. Leader was represented by counsel, engaged in pretrial discovery, had a three-day jury trial wherein witnesses testified and were cross-examined, and diagrams and photographs were introduced, and following the guilty verdict, a motion for a new trial was argued. Therefore, Leader not only had a full and fair opportunity to defend himself, but in fact did so.[4] We are mindful that "collateral estoppel may be applied only if due process requirements are satisfied." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].)

Some of the same issues Leader is attempting to litigate in the civil proceeding were decided in the criminal trial. In his civil action, Leader charged that Vaughn, acting within the course and scope of his employment, committed a battery on him by use of unreasonable force. In the criminal case, Leader was found guilty of battery against an officer and resisting arrest. These facts have been conclusively determined against him and are binding on him in the civil action. Thus, Leader is limited to litigating the issue as to whether the officers used unreasonable force on him to effect the arrest.

Leader cannot relitigate these issues by testifying on direct that during the arrest, he was surprised by a brutal and unprovoked attack on his person by the officers. Such testimony has the effect of leaving the trier of fact with the impression Leader was completely cooperative and engaged in no conduct that would call for such forceful conduct by the officers merely to place him under arrest. The trier of fact is thus presented with a false and incomplete picture of what occurred in connection with the incident, given Leader's convictions.

To permit relitigation of his conduct in the course of his arrest after he has been justifiably convicted of resisting arrest and battery on a police

---

[3] See Penal Code sections 148, 242 and 243. Leader was in fact sentenced to time in custody in the county jail.

[4] Unlike the situation in *Crowall* v. *Heritage Mut. Ins. Co., supra,* 346 N.W.2d at page 331, footnote 6, we have the record of Leader's criminal proceeding before us. Under Evidence Code section 452, judicial notice may be taken of "(d) Records of . . . any court of this state . . . ." Under Evidence Code section 459 "[t]he reviewing court may take judicial notice of any matter specified in Section 452."

officer is to hold the criminal justice system in disrepute and to allow Leader to benefit from his criminal acts. As indicated, such a state of affairs is looked upon with disfavor. "[A] court in a civil proceeding should not allow a convicted defendant to resuscitate [postures] that a criminal court already has rejected." (Thau, *Collateral Estoppel and the Reliability of Criminal Determinations: Theoretical, Practical, and Strategic Implications for Criminal and Civil Litigation, supra,* 70 Geo. L.J. at p. 1100; see, e.g., *Breeland* v. *Security Insurance Co. of New Haven, Conn.* (5th Cir. 1969) 421 F.2d 918, 922-923; *Eagle, Star and British Dominions Ins. Co.* v. *Heller* (1927) 149 Va. 82 [140 S.E. 314, 321].)

The battery and resisting arrest convictions are *conclusive* on those issues and are to be considered by the trier of fact on the ultimate issue of whether unreasonable force was used against Leader during the arrest. (*Scott* v. *Robertson, supra,* 583 P.2d at p. 193; *Breeland* v. *Security Insurance Co. of New Haven, Conn., supra,* 421 F.2d at p. 923; *Taylor* v. *Taylor* (1962) 257 N.C. 130 [125 S.E.2d 373, 376]; *Hurtt* v. *Stirone, supra,* 206 A.2d at p. 626.)

2. ██ *Leader's misdemeanor convictions are admissible pursuant to section 780, subdivision (i), to prove the nonexistence of facts testified to by him.*

On direct examination in the civil trial, Leader testified that during the arrest he was asked to turn around, and Leader knew he was to be handcuffed at that time. He turned, put his hands behind his back and bent slightly forward. He looked up and "saw a silhouette of a second officer coming down with a club." His right wrist was grabbed. He threw up his left arm to block the blow and a second one hit him on the wrist bone. He was then struck in the stomach, whereupon he jerked his right arm free and tried to cover up. As he was going down, he was struck in the head and fell to the ground, and woke up in the hospital.

On cross-examination, Leader testified he was not belligerent or uncooperative, that Vaughn just walked up and swung a baton at him, that prior to being hit, he never struck Vaughn, and never saw nor touched the other officer.

At this juncture in the trial, the convictions were offered into evidence, which eventually the trial court disallowed, relying "primarily" on section 352. This section allows a trial court in its discretion to exclude certain evidence if its probative value is substantially outweighed by the probability that its admission will, inter alia, create substantial danger of undue prejudice.

However, section 352 cannot be invoked to defeat the proper use of the doctrine of collateral estoppel; its application necessarily results in the ultimate prejudice!

Section 780 provides: "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: [¶] . . . . [¶] (i) The existence or nonexistence of any fact testified to by him."

In *People* v. *Cooks* (1983) 141 Cal.App.3d 224 [190 Cal.Rptr. 211], the application of section 780, subdivision (i), was discussed. In *Cooks*, defendant Simon was convicted of first degree murder and other charges. When Simon was cross-examined by counsel for two of the other defendants, he testified he never received a gun from a Thomas Manney and never owned or possessed a gun. When cross-examined by the prosecutor, Simon again denied ever possessing a handgun. (*Id.*, at p. 324.) "The prosecutor then asked him: 'Is it not a fact, Mr. Simon, that in January of 1971 you pled guilty to possessing a stolen gun in Sutter County?'" (*Ibid.*)

Simon's counsel objected on the ground his client could not be impeached by use of a prior *misdemeanor* conviction. This objection was overruled. (*Ibid.*)

The *Cooks* court pointed out "[i]n this case, . . ., the reference to the prior conviction was not asserted as a specific instance of conduct 'tending to prove a trait of his character' (Evid. Code, §§ 787, 788), such as dishonesty, but was offered and properly admitted to contradict his prior statement that he never possessed a gun. (See Evid. Code, § 780, subds. (h) and (i); . . .)" (*People* v. *Cooks, supra,* 141 Cal.App.3d at p. 324.)

The *Cooks* court recognized the clear distinction between evidence offered as so-called "character evidence" versus evidence which is offered solely for the purpose of contradicting a statement made by the defendant on the witness stand. (§ 780, subd. (i).) Under Evidence Code section 787, such evidence would be inadmissible to prove Simon had a character trait for dishonesty.

Leader fails to make this subtle but vital distinction as he mistakenly relies on *People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545], for the proposition that misdemeanor convictions can *never* be used to impeach a witness's credibility.

Another example of the proper application of section 780, subdivision (i) is found in *People* v. *Reyes* (1976) 62 Cal.App.3d 53 [132 Cal.Rptr. 848]. Reyes was charged with bookmaking, and was asked on direct if he had engaged in any type of betting or bookmaking on the day he was arrested. (*Id.*, at pp. 58, 60.) He responded: "'No. Absolutely not[,]'" and further denied ever engaging in any betting or bookmaking. (*Id.*, at p. 60.) On cross-examination, Reyes admitted he had pled guilty to a misdemeanor booking charge about one year prior to the instant criminal prosecution. (*Ibid.*)

On appeal, Reyes contended the trial court erred in admitting evidence of his prior bookmaking conviction. (*Id.*, at p. 61.) Relying on the doctrine of limited admissibility (Evid. Code, § 355), the *Reyes* court held such evidence may be admissible for some purposes but not for others. "Thus, evidence of a specific instance of a witness' conduct is inadmissible under Evidence Code section 787 to impeach the witness as proof of a trait of his character but may become admissible to impeach the witness pursuant to Evidence Code section 780, subdivision (i), by proving *false* some portion of his testimony." (*People* v. *Reyes, supra,* at p. 62.)

Here, the misdemeanor convictions were offered for the limited purpose of establishing the "nonexistence" of facts testified to on both direct and cross examination by Leader—that he did not batter the officers and in no way resisted arrest—not to discredit Leader's character.

Leader argues that in *Reyes,* the conviction was admitted only after Reyes' sweeping denial on *direct* of *ever* having engaged in bookmaking. (*Ibid.*) Leader cites to the *Reyes'* court comment: "Had this testimony been elicited by the prosecutor on cross-examination, the impeaching evidence of defendant's prior misdemeanor conviction for bookmaking would have been *inadmissible* by virtue of the rule that a cross-examiner may not elicit testimony on a *collateral matter* for the purpose of contradicting that testimony or proving it to be false pursuant to Evidence Code section 780, subdivision (i). [Citations omitted.]" (*Ibid.*, second italics added.) Leader urges that the damning statements in *Reyes* were received on *direct,* while in Leader's case, they came in under *cross-examination.*

However, his argument in this regard is unavailing. Leader testified on direct he was beaten by the officer but was not belligerent, did not resist arrest, did not strike the officers and served only to repeat his story on cross.

Here, it is of no matter whether the impeachable statements were made during direct or cross examination, as Leader's statements were not on a *collateral matter.* In *Reyes,* the prior misdemeanor bookmaking conviction arose from a *different event* than that with which he was currently charged,

and thus it was arguably collateral.[5] Leader's misdemeanor convictions arose from the *same incident* on which he based his civil action. Therefore, Leader's misdemeanor convictions could not be considered in any way *collateral*.

 Relying on *People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1], Leader also contends the misdemeanor is too remote in time to be admissible. He argues nearly six years had elapsed between the time he was convicted and the trial of the civil case. However, Leader's remoteness argument is not persuasive. While Leader filed the civil action less than one year after the date of his arrest and before the criminal trial, and several years elapsed before the civil action reached trial, here the misdemeanor convictions arose from the *exact same incident* upon which the civil action is based.

Leader's misdemeanor convictions are admissible under section 780, subdivision (i).

## CONCLUSION

Because due process standards were met at the time of his criminal conviction, Leader is collaterally estopped in his civil cause of action from relitigating the issues of his battering an officer and resisting arrest, and is limited to trying the issue of whether the officers used unreasonable force in said arrest.

In addition, Leader's misdemeanor convictions can be admitted under section 780, subdivision (i) to prove the nonexistence of facts to which he testified in contradiction to facts conclusively determined by said convictions.

## DISPOSITION

The judgment is reversed. Each party to bear costs on appeal.

Danielson, J., and Arabian, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 20, 1986. Mosk, J., was of the opinion that the petition should be granted.

---

[5]Interestingly, the impeaching statements in *People* v. *Cooks, supra,* 141 Cal.App.3d at page 324, came in under cross-examination, but the court held the prior handgun conviction admissible without discussing whether the prior misdemeanor was collateral.