Filed 5/7/13  P. v. Bow CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HENRY FLOYD BOW,<br><br>    Defendant and Appellant. | 2d Crim. No. B240088<br>(Super. Ct. No. 2010038041)<br>(Ventura County) |

Henry Floyd Bow appeals from a judgment after conviction by jury of one felony count of indecent exposure with a prior conviction of a similar offense.  (Pen. Code, § 314, subd. 1.)[1]  Bow admitted he had suffered four prior strike convictions.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)  The trial court struck an alleged prior prison term and sentenced him to a term of 25 years to life in state prison.

Bow contends (1) the trial court denied him a fair trial when it allowed the prosecutor to impeach his testimony with his prior misdemeanor convictions for indecent exposure, (2) a special instruction on moral turpitude unduly emphasized his past conduct, (3) he is outside the spirit of the three strikes law and the trial court abused

---

[1] All statutory references are to the Penal Code unless otherwise stated.

its discretion when it denied his *Romero*[2] motion, and (4) his sentence constitutes cruel and unusual punishment. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Bow's criminal history includes three prior convictions for felony lewd acts upon his daughter in 2002 (§ 288, subd. (a)); two prior convictions for misdemeanor indecent exposure in 1999 and 1994 (§ 314); and one prior felony conviction for burglary in 1982 (§ 459). When he was arrested for the present offense, he had been on parole for less than one year.

Carolyn K. testified that in 2010 she was 13 years old. She went shopping with her mother in the women's section of Nordstrom Rack in Oxnard. Bow walked by her with his head down and said, "You're beautiful." She said, "Thank you." She walked over to the cash register to join her mother.

A couple minutes later, Bow pulled his penis out of his pants. He kept his head down and did not look at Carolyn. He was holding clothes in one hand and took his penis out with the other. Carolyn did not see whether Bow manipulated his penis and did not know whether it was erect.

Carolyn looked away. She told her mother, who then told a cashier. Bow was shopping with his wife. Carolyn saw them put down merchandise and leave the store. She had never seen Bow before.

A former employee of Nordstrom Rack, Reanna Carrillo, testified that on the same day Bow followed her during her shift. Bow told her she looked beautiful, and he said she "looked like [she] was a mean girl." He asked her how to pronounce her name and how old she was. Carrillo was 22 years old. She felt uncomfortable and walked away.

Oxnard Police Officer Guy Hartson testified that he responded to a dispatch about the incident. He saw a car on Highway 101 with plates matching those

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

2

described in the dispatch, and pulled the car over. He questioned Bow and arrested him. He recorded the post-arrest interrogation.

The prosecution played the audiotape for the jury. Bow admitted, "I exposed myself to a, a young lady." He told Officer Hartson that "she looked Chinese," and she seemed about 17 years old. He told her she was "beautiful." The girl walked away and stood in line with her mother. Bow put the merchandise he was holding into one hand to shield that side of his body, and used the other hand to "zip[] [his] zipper down and . . . expose[] [him]self" to the girl. He said he took his entire penis out, and held it in his hand. It was not erect. The girl turned away. He said he was "hoping she would kinda" look back, "but she didn't so [he] put it back and zipped [his] zipper up and walked off."

Bow said he returned to his wife, who was nearby, and they spent another 10 minutes in the store. He saw the girl and her mother talking to people, "[s]o then [he] said let's go and we [got] in the car." When he saw someone looking at his license plate, Bow got out of the car and asked him "what was goin' on." The man said "nothin'," so they "took off." In the car, he told his wife "what happened." He said he might be going back to jail, and he was sorry. He told her, "I need help," and that he was embarrassed and "should've told [her] a long time ago."

In a pretrial ruling, the trial court denied the prosecution's request to use Bow's three 2002 molestation convictions to prove propensity and sexual intent. The court found they were probative but unduly prejudicial. (Evid. Code, §§ 352, 1108.) The court ruled that the prosecution could use for impeachment that Bow suffered three felony convictions in 2002 and one misdemeanor conviction for a crime of moral turpitude in 1999, but could not otherwise question him about those crimes. The court excluded the 1994 and 1982 convictions for all purposes, finding they were remote, cumulative, and unduly prejudicial.

The parties stipulated that Bow "suffered 3 felony convictions involving a crime of moral turpitude" and "suffered a misdemeanor conviction involving a crime of

3

moral turpitude."  The trial court read this stipulation to the jury at the close of the prosecution's case, just before Bow testified.

Bow testified on direct examination that he did not intentionally show his penis to Carolyn K.  He said his confession was false.

Bow testified that he passed Carolyn in an aisle and said, "Oh, you [are] beautiful."  She said, "Oh, thank you."  He also complimented Carrillo.  He often compliments people.

A short time later, when Bow was looking at clothes for his wife, he noticed his zipper was unzipped.  He had been trying on clothes.  He moved the clothes he was holding into one hand, and tried to zip his pants with the other.  As he did so, the sleeve of a shirt got caught in his zipper.  He looked up and saw Carolyn duck her head behind her mother.  Carolyn was mistaken about seeing his penis.  He did not take it out and he was wearing underwear.

Bow put down the clothes he had been carrying and walked over to his wife.  He tried on shoes before they left.  His stomach was upset.  He saw people gathering where Carolyn was and thought she had spoken to security and that something was wrong.  He asked an employee if anything was wrong.  The employee said no, so they left.  They left because the line was not moving and they had a movie to catch.

Bow testified that his recorded statement was false.  He lied to Officer Hartson because he was on parole, he was "scared to death," and that "[was] what [the officer] wanted to hear."  Before Hartson turned on the recorder, Hartson accused him of exposing himself to a girl at Nordstrom Rack, called him "boy," asked him who was the "white woman" in the car, and asked him if he knew "what we do with sex offenders in the neighborhood."  Bow was in the police car.  Hartson stood in the doorway with his hand on his gun and said, "I don't like people lying at me."  Bow felt like he was "a black male in a dead-end street by these fields with a white woman in the car and this man with a gun on [him]."

4

On cross-examination, the prosecution asked Bow if "exposing [him]self to another person, a stranger, in public is gross," and if he "would never expose [him]self to someone in public on purpose." The trial court overruled "relevance" and "argument[]" objections. Bow answered, "Right," to both questions.

Over defense objection, the trial court then allowed the prosecution to question Bow about the facts of the 1999 and 1994 indecent exposure convictions. Bow acknowledged both convictions. He said that the 1999 conviction was for walking on a street naked with two other men during a demonstration in Berkeley. He said that the 1994 conviction was for urinating on a building. The prosecutor offered no contradictory evidence. After approaching the bench, the prosecutor asked Bow whether the 1999 conviction was actually for exposing himself in a Macy's department store. Bow said he did not remember.

In rebuttal, the prosecutor recalled Officer Hartson and played a recording of Hartson's initial contact with Bow, in which Hartson did not threaten Bow. On cross-examination, Hartson acknowledged that he turned off the recorder for a period of time between the initial contact and the recorded admissions.

In closing, the prosecution argued that Bow intentionally exposed himself for the purpose of sexual gratification as proven by Carolyn K.'s testimony and Bow's recorded admissions. The defense argued that Bow falsely confessed because he was afraid, and that he did not intentionally expose himself, his zipper was stuck, and Carolyn must have been mistaken about seeing his penis. In rebuttal, the prosecution argued that the two prior convictions for indecent exposure proved there was no mistake or accident. The prosecutor asked the jury, "[H]ow many times do you accidentally have your penis out that you get caught for it now three times?"

The trial court instructed the jury pursuant to CALCRIM No. 316 that it could consider a prior felony conviction or a "crime or other misconduct" in evaluating credibility. It also gave a special instruction, over defense objection, that crimes

5

involving moral turpitude tend to show "moral depravity," and "bad character," indicating a person is "unworthy of credit."

Before sentencing, the trial court denied Bow's motion to strike three of his prior convictions. The court found that Bow falls "squarely in the purposes of the recidivist law," based on his lengthy history of sex crimes involving minor females, his inability or unwillingness to curb his conduct, the short period of time between his release and the present offense, the fact that he did not take responsibility in his testimony or his statement or the probation officer, and his characterization of his past offenses as misunderstandings. The court stated it had "very little doubt that when he is released, if he's released, that his -- that the same kind of conduct will continue . . . ." At the sentencing hearing, Bow continued to deny any past sexual misconduct. He told the court that he never sodomized his daughter, he only patted her bottom, and he falsely admitted the molestation to protect his children from a trial. He said he never committed any misconduct involving another child.

DISCUSSION

*Impeachment with Prior Indecent Exposure Convictions*

The prosecutor asked Bow whether he had been convicted twice for indecent exposure, and also asked him about the conduct underlying those convictions. Bow contends that (1) evidence of the convictions should have been excluded because it was hearsay (Evid. Code, § 1100; *People v. Wheeler* (1992) 4 Cal.4th 284, 300); and (2) evidence of both convictions and the conduct underlying those convictions should have been excluded because it was unduly prejudicial (Evid. Code, § 352).

Bow forfeited the hearsay objection when he did not raise it at trial. (Evid. Code, § 352, subd. (a); *People v. Wheeler*, *supra*, 4 Cal.4th at p. 300.) That deficiency did not constitute ineffective assistance because, as we explain below, it is not probable the result would have been different if the convictions had been excluded.

Bow preserved the Evidence Code section 352 objection. He raised it in opposition to the prosecutor's pretrial motion to admit evidence of past misconduct.

6

And his counsel objected to the prosecutor's questions on "relevance" grounds.  We review the trial court's decision under section 352 for abuse of discretion and find none. (*People v. Foster* (2010) 50 Cal.4th 1301, 1329.)

The parties agree that indecent exposure is a crime of moral turpitude. Subject to the trial court's discretion under Evidence Code section 352, evidence of Bow's nonfelonious conduct involving moral turpitude was admissible to impeach his testimony.  (*People v. Wheeler*, *supra*, 4 Cal.4th at p. 295.)

The trial court initially exercised its discretion under Evidence Code section 352 to exclude all evidence of the conduct underlying the indecent exposure convictions, and to allow only the "sanitized" fact that he suffered a misdemeanor conviction for a crime of moral turpitude, as well as three felonies.  The decision was a sound exercise of discretion and took into account that the conduct was highly probative but was somewhat remote in time and involved the identical crime.

On direct examination, Bow testified only about the Nordstrom incident. He made no "sweeping" denial of willingness or unwillingness to expose himself in public.  (See, e.g., *Leader v. State of California* (1986) 182 Cal.App.3d 1079, 1091 [sweeping denial of never having engaged in bookmaking rendered prior misdemeanor convictions admissible].)  But Bow did claim accident and mistake.  He said his zipper was stuck and he "didn't intend for nobody to see -- to see nothing.  No, sir."

The trial court did not abuse its discretion when it allowed the prosecutor to explore Bow's claims.  The prosecutor elicited Bow's statement that he would never intentionally expose himself in public.  A cross-examiner may not elicit collateral testimony merely for the purpose of impeaching it.  (*People v. Mayfield* (1997) 14 Cal.4th 668, 748.)  But the question of mistake or accident was not collateral.  Bow's testimony increased the probative value of his prior convictions because they had a tendency in reason to disprove a "fact testified to by him," that any exposure was accidental.  (Evid. Code, § 780, subd. (i).)  The court did not abuse its discretion when it allowed the examination.

7

In any event, it is not probable that the result would have been different without the evidence of his prior convictions for indecent exposure. Independent evidence of Bow's guilt was overwhelming. Bow admitted that he intentionally exposed himself in a recorded statement. The details of his statement were entirely consistent with the descriptions offered by Carolyn K. and Carrillo. Bow's claim that Officer Hartson coerced him was uncorroborated and was partially undermined by the rebuttal audiotape. His flight from the store demonstrated consciousness of guilt, as did his apology to his wife. His innocent explanations were implausible. The prosecutor's questions about the prior convictions were brief. Bow was allowed to explain the convictions, and his assertion that they arose from a demonstration in Berkeley and public urination was not contradicted.

*Special Instruction on Crimes of Moral Turpitude*

Bow contends the special instruction on moral turpitude was not impartial because it unduly emphasized his prior misconduct and was unnecessary in view of CALCRIM No. 316. (*People v. Lyons* (1956) 47 Cal.2d 311, 322.) We disagree.

We independently review claims of instructional error. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) The special instruction on moral turpitude fulfilled the trial court's duty to further explain a term that has a specific or technical meaning peculiar to the law. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1318-1319.) The court instructed the jury that the parties had stipulated that Bow suffered prior convictions for crimes of "moral turpitude," a legal term of art. The court explained the term, instructing that "[c]rimes involving moral turpitude have been found to show the defendant's 'moral depravity,' and support the general proposition that the defendant is of 'bad character' and 'unworthy of credit.'" The special instruction correctly stated the applicable law. (*People v. Castro* (1985) 38 Cal.3d 301, 314-315.) The subject of the

8

instruction was not fully covered by other instructions, because CALCRIM No. 316 does not explain "moral turpitude."[3]

## Romero Motion

Bow contends the trial court abused its discretion when it denied his motion to strike three of his prior strikes because he falls outside the spirit of the three strikes law. He points out that his conduct would have constituted a misdemeanor were it not for his prior convictions, that the offense was relatively minor because it was committed in a public place and did not involve masturbation or contact, that his conduct was mitigated because he was sexually abused as a child, that none of his prior strikes were violent, that one occurred 28 years previously, and that the other occurred eight years previously.

A trial court has discretion to strike a prior felony conviction "in furtherance of justice." (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 161.) It "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part . . . ." (*Williams*, at p. 161.) We review the trial court's decision whether or not to strike a prior felony conviction pursuant to a deferential abuse of discretion standard. (*Id.* at p. 162.) We do not substitute our decision for that of the trial court. "It is not enough to show that reasonable people

_____

[3] Pursuant to CALCRIM No. 316, the trial court instructed, "If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact of a conviction does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable. [¶] If you find that a witness has committed a crime or other misconduct, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."

might disagree about whether to strike one or more of [defendant's] prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Bow has not met his burden of establishing that the trial court's decision is unreasonable. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) The record demonstrates that the trial court carefully considered each of the mitigating factors identified by Bow on appeal. It also considered Bow's "long history of sexual deviant behavior" from age 20 to the current offense at age 48, including three prior strikes committed on his daughter when she was 9, 10, and 12 years old. It found that his crimes "seem to revolve around . . . minor females." It noted the absence of any "significant breaks of noncriminal . . . behavior," that he was on parole when he committed the offense, and that he was "not taking any responsibility for his actions." The record supports the trial court's conclusion that, in view of Bow's background, character, and prospects, he does not fall outside the spirit of the three strikes law. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

*Cruel and Unusual Punishment*

The Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution prohibit the infliction of cruel and unusual punishment. The United States Supreme Court has rejected the claim that life terms imposed on recidivists violate the proscription against cruel and unusual punishment. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 77 [life sentence for petty theft with a prior by recidivist under three strikes law did not violate the Eighth Amendment]; *Ewing v. California* (2003) 538 U.S. 11, 29 ["In weighing the gravity of [defendant's] offense, we must place on the scales not only his current felony, but also his long history of felony recidivism"].) California state courts also have rejected constitutional challenges to the three strikes law. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511-1512.) Under state law, the defendant must demonstrate that the punishment is so disproportionate to the crime for which it was imposed that it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) Bow's

10

sentence was not disproportionate in view of his criminal record, which includes four strikes, three violations of parole, and two prior indecent exposure convictions. Bow's sentence is properly based on the present offense, his recidivist behavior, and his demonstrated inability to rehabilitate.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

11

Ferdinand D. Inumerable, Judge

Superior Court County of Ventura

_____

Linda C. Rush, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.