Filed 10/6/15  Kagan v. City of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DOROTHY KAGAN, | B259028 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC484008) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Teresa A. Beaudet, Judge.  Affirmed.

Dorothy Kagan, in pro. per. for Plaintiff and Appellant.

Mary C. Wickham, Acting County Counsel, Lawrence L. Hafetz, Assistant County Counsel, and Dusan Pavlovic, Deputy County Counsel, for Defendant and Respondent.

_____

Self-represented plaintiff and appellant Dorothy Kagan (Kagan) challenges the summary judgment entered against her and in favor of defendant and respondent County of Los Angeles (the county) on Kagan's complaint seeking declaratory relief, an injunction and damages. The gist of the complaint was that, by prosecuting Kagan in a 2007 criminal case which resulted in her conviction of multiple zoning violations, and then prosecuting her for a probation violation that resulted in the revocation of her probation in 2012, the county violated Kagan's rights under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12131 et seq.), committed fraud and intentionally inflicted emotional distress upon Kagan. On appeal, Kagan contends the trial court erred in finding her ADA claims time-barred and her tort claims barred by the Government Claims Act (Gov. Code, § 810 et seq.) We conclude the complaint in this case is an improper collateral attack on prior criminal proceedings and for that reason affirm the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *The Prior Criminal Case*

Kagan owns a parcel of land zoned A-1, which means it is zoned for light agricultural use (the property). In October 2004, Kagan was charged in a nine count criminal complaint with misdemeanor violations of the Los Angeles County Code and Building Code arising from allegations she was living on the property with her two dogs, "Paca" and "Laudie," in an unpermitted structure with no water, heat or toilet facility (case No. BR045536) (the criminal case). Following a 12-day jury trial, Kagan was convicted of four of the nine counts: unlawfully erecting a fence (§ 22.48.160; counts 3 and 6);[1] unlawfully keeping dogs without an approved dwelling (§ 22.24.050(a); count 8);[2] and unlawfully using an arbor for residential purposes (§ 22.24.025; count 9).[3] In

---

[1]    All undesignated code references are to the Los Angeles County Code. Section 22.48.160 limits the height of fences and walls.

[2]    Section 22.24.050 reads:

2

June 2007, she was sentenced to three years probation; one probation condition prohibited Kagan from having any dogs on the property. Kagan's conviction was affirmed on appeal.

Over the next several years, Kagan repeatedly violated probation, resulting in a number of warnings, a community service sentence and, in 2010, a jail sentence. At a

---

"Dogs may be kept or maintained in agricultural zones as follows:

A. A person shall not keep or maintain more than three dogs over the age of four months per *dwelling unit* in any agricultural zone, whether kept or maintained for the personal use of such person or otherwise.

B. A service dog, as defined in Section 10.20.090 of this Code, shall not be counted toward the number of dogs authorized to be kept or maintained pursuant to subsection A of this Section." (Italics added.)

" 'Dwelling unit' means one or more rooms in a building . . . used for occupancy by one family for living and sleeping purposes." (§ 22.08.040.) A "single family residence" is "a building containing one dwelling unit." (§ 22.08.180.)

Section 10.20.090 reads:

"A. A 'service dog' is a . . . dog individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair or fetching dropped items.

B. Every person owning or having custody or control of a dog over the age of four months, *who submits proof to the director that such dog has been successfully trained as a service dog as defined above in subsection A, shall procure a service dog license and a service dog license tag,* which license and tag shall be valid while the dog is acting as a service dog, and is owned and kept by the same person. The tag shall be returned to the Department by the owner or keeper of the dog upon transfer of ownership or possession of the dog, or upon the retirement or death of the dog." (Italics added.)

[3] Section 22.24.025 reads: "A person shall not use any *premises* in any agricultural zone except as hereinafter specifically permitted . . . ." (Italics added.) Although the code does not define "premises," section 22.24.070 mandates that a single-family residence in zone A-1 (i.e. a building containing one dwelling unit) meet the standards set forth in section 22.20.105, which prescribes certain construction materials (proscribes others), as well as width and area minimums.

probation revocation hearing in February 2012, the trial court warned Kagan that the next violation would result in a significant jail sentence.

In March and April 2012, a zoning inspector took photographs of a dog on the property. That dog, "Jake," was impounded by the County's Department of Animal Care and Control (the department) and Kagan was charged with violating her probation. Kagan was represented by appointed counsel at the probation revocation hearing on May 3, 2012. During a *Marsden* hearing, Kagan informed the trial court that she had filed this civil case and had obtained a temporary restraining order (TRO) directing the county to release Jake to a specified person. The trial court denied Kagan's *Marsden* motion. That Kagan was disabled and Jake was her service dog was apparently not raised as a defense in the actual probation revocation hearing. At the conclusion of that hearing, the trial court revoked Kagan's probation and sentenced her to 710 days in jail. Kagan did not appeal from the revocation of her probation.

2.      *This Civil Case*

On May 2, 2012, the day before for the probation revocation hearing in the criminal case, Kagan filed the verified complaint in this case (the complaint) and an application for a Temporary Restraining Order seeking to prevent the county from killing Jake.[4] In those pleadings, Kagan explained that Jake was not either of the now deceased dogs Kagan had living with her in 2007, when she was convicted in the prior criminal case. Rather, Jake was a "certified service dog" and Kagan needed Jake to assist her with balance and fall prevention, apparently related to her diagnosis of and treatment for posttraumatic stress syndrome. Kagan did not live on the property with Jake, but

---

**4**      The trial court issued a TRO directing the department to release Jake to an employee of the Superior Court. An Order to Show Cause (OSC) re permanent injunction was set for May 24, 2012. By the time of the OSC hearing, Jake had been released to the named court employee. Kagan did not appear at the OSC hearing. The trial court took the OSC off calendar and dissolved the TRO since the issue of euthanizing Jake was then moot.

4

sometimes brought him there to exercise; Jake was also trained to guard the property. At the time of the alleged probation violation, Kagan had not procured a service dog license or tag for Jake, as required by sections 22.24.050 and 10.20.90, but she subsequently did so.

The complaint's First Cause of Action for violation of the ADA sought a declaration that the county's actions taken to prevent her from having a service dog on the property was a violation of her rights under the ADA; the Second Cause of Action for fraud alleged Kagan had been denied due process in the 2007 trial in the criminal case because the jury instructions did not accurately state the zoning ordinance she was charged with violating; the Third Cause of Action alleged intentional infliction of emotional distress arising from "the increasing painful discrimination pursuant to the ADA, and for past incarceration . . . , and the constant threat of future incarceration and threat of harm to Jake."

The county moved for summary judgment or in the alternative summary adjudication on the grounds that: (1) Kagan's ADA-based claims were time-barred because the injury occurred in June 2007, when the "no dogs" probation condition was imposed, but the complaint was not filed until five years later, in May 2012 (Code Civ. Proc., § 335.1) and (2) the county was immune from liability for the common law torts of fraud and intentional infliction of emotional distress under Government Code sections 815, subdivision (a), 815.2, subdivision (b) and 818.[5] In her opposition to the motion, Kagan argued: "The fact that Kagan was going to be sentenced in a probation violation hearing [on] May 3, 2012, for having a dog on the property, when that dog is a service dog, is a violation of Kagan's ADA rights. Certainly, the fact that the County was refusing to recognize the legality of Jake being on the property at that time in 2012, a

---

[5]    The county did not argue that Kagan was collaterally estopped from relitigating her 2007 conviction and/or probation revocation in this civil action. (See e.g. *Heck v. Humphrey* (1994) 512 U.S. 477 [federal cause of action challenging validity of state criminal conviction is not cognizable unless the state conviction has been invalidated]; *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 902 [rule applies to state tort claims that challenge criminal conviction]). The county raises the issue on appeal.

service dog, was a violation. Therefore, Kagan timely file[d] the complaint on May 2, 2012, in order, primarily, to obtain a preliminary injunction to save Jake's life, as the county was threatening to kill him. [¶] Yet, the County is trying to claim that Kagan needed to file the complaint in 2007, when she didn't even own Jake."

Kagan also argued the county was not immune from liability for fraud and intentional infliction of emotional distress. According to Kagan's separate statement of disputed fact: Jake was a service dog and was not either of the two dogs living with Kagan at the time of the 2007 criminal conviction, the jury instructions in the 2007 criminal trial were "corrupted" and did not accurately state the law, the doctor she was ordered to see as a condition of her probation in the criminal case was a "meth addict" and his license had been revoked, the district attorney told the jury in the criminal case that Kagan was manipulative and told Kagan's neighbors she was crazy, her appeal of the 2007 criminal conviction was denied and she was "thwarted by appellate counsel" in the criminal case; and the county's moving papers misstated several dates.

Following a hearing on June 18, 2014, the trial court granted summary judgment in favor of the county. It found the First Cause of Action for violation of the ADA was time-barred and that the Second Cause of Action for fraud and Third Cause of Action for intentional infliction of emotional distress failed as a matter of law under the governmental immunity doctrine (see Gov. Code, §§ 815, 815.2, subd. (b), 821.6). Pursuant to Code of Civil Procedure section 1032, subdivision (b), the trial court awarded the county costs in the amount of $1,178. Judgment was entered on August 5, 2014. Notice of Entry of Judgment was served on September 2, 2014. Kagan timely appealed.

**DISCUSSION**

A. *Standard of Review*

The standard of review on appeal from summary judgment is well settled. " 'A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he . . . is entitled to judgment as a matter of law."

6

[Citation.] A defendant satisfies this burden by showing " 'one or more elements' of the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. [Citation.] " 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " [Citation.] . . . In determining whether these burdens have been met, we review the record de novo. [Citation.]' [Citation.]" (*Lujano v. County of Santa Barbara* (2010) 190 Cal.App.4th 801, 806.)

B.      *Collateral Estoppel*

Although not a ground relied upon by the trial court, the county argues that summary judgment was appropriate because the complaint in this case is an improper collateral attack on the judgment in the prior criminal case and/or the probation revocation. Kagan counters that the complaint is not a collateral attack on the 2007 conviction because her ADA and intentional infliction of emotional distress claims are based on the 2012 probation revocation, not the 2007 criminal case; she does not explain how the fraud cause of action, the gravamen of which is a challenge to the jury instructions in the 2007 criminal case, is not an attack on the judgment in that case. As we shall explain, the complaint in this case is an improper collateral attack on both the 2007 criminal case and the 2012 probation revocation.

An appellate court is not bound by reasons or rationales stated by the trial court for granting summary judgment. (*Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254, 1259.) But an argument raised for the first time on appeal will generally not be considered if it requires consideration of new factual questions. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 336.) The exception is a newly raised issue that involves " 'purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence.' [Citations.]" (*Ibid.*) Under such circumstances, the opposing party must have notice and an opportunity to be heard. (*Ibid.*, citing Code Civ. Proc., § 437c, subd. (m)(2).) The

notice and opportunity to be heard requirement is satisfied if the defendant addresses the issue in its Respondent's Brief and the plaintiff does so in its Reply Brief. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39.) That the county raised the collateral estoppel issue in its Respondent's Brief and Kagan addressed it in her Reply Brief satisfies the notice and opportunity to be heard requirement. Further, application of the collateral estoppel doctrine presents a pure question of law. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10.) We next turn to the merits of the county's argument.

It is well settled that issues decided in a criminal case cannot be relitigated in a subsequent civil case. (*McCutchen v. City of Montclair* (1999) 73 Cal.App.4th 1138, 1144.) This is known as the collateral estoppel doctrine. (*Ibid*.) It applies unless the criminal conviction has been invalidated. (See *Heck v. Humphrey, supra,* 512 U.S. 477 [unless the conviction has been invalidated, it cannot be challenged by a civil rights action (42 U.S.C. § 1983)].) The rule " ' "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." ' [Citation.]" (*Yount v. City of Sacramento, supra,* 43 Cal.4th at p. 894.) The rule applies not only to federal causes of action that challenge the validity of a state conviction, but also to state tort claims that do so. (*Id.* at p. 902.)

The collateral estoppel doctrine is not limited to felony convictions. It applies to civil claims that challenge misdemeanor convictions when three criteria are met: (1) the prior misdemeanor conviction is for a "serious" offense (defined as any misdemeanor punishable by imprisonment), so that the defendant was motivated to fully litigate the charges; (2) the issue in the civil suit was necessarily decided in the criminal trial; and (3) a "full and fair misdemeanor trial" actually occurred. (*Leader v. State of California* (1986) 182 Cal.App.3d 1079, 1087.) The essential elements of a fair trial are notice of the charges, a right to be heard, a right to confront witnesses and a right to counsel. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 294.)

8

Neither the county nor Kagan has cited, and our individual research has found no case applying the collateral estoppel doctrine to civil suits challenging issues resolved in a probation revocation hearing.[6] We conclude the doctrine applies to probation revocation hearings which meet the criteria set forth in *Leader* for prior misdemeanor convictions: (1) the alleged probation violation must be punishable by imprisonment; (2) the issue in the civil suit was necessarily decided in the probation revocation hearing; and (3) a full and fair probation revocation hearing actually occurred. Both the misdemeanor trial in the 2007 criminal case and the 2012 probation revocation hearing met all the criteria for collateral estoppel effect.

### a. Continued Validity of the Prior Criminal Proceedings

Each cause of action in Kagan's complaint challenges the validity of either her conviction in the 2007 criminal case or the 2012 revocation of her probation, or both. The results at both proceedings have not been invalidated. On the contrary, Kagan acknowledges that her conviction on the 2007 criminal case was affirmed on appeal. Kagan did not directly challenge the probation revocation. Thus, both the 2007 conviction and 2012 probation violation remain valid.

### b. The Prior Misdemeanor Convictions were for "Serious Offenses"

The misdemeanors of which Kagan was convicted in 2007 were "serious offenses." Not only were they punishable by imprisonment, the 2012 probation violation actually resulted in Kagan's lengthy incarceration.

---

[6] *Lucido v. Superior Court* (1990) 51 Cal.3d 335, is the leading case on the collateral estoppel effects of decisions in probation revocation proceedings on subsequent *criminal* proceedings. In *Lucido*, at a probation revocation hearing prior to the defendant's trial for indecent exposure, the court found that the prosecution had failed to prove a probation violation based on the offense, but declined to dismiss the charges on the ground of collateral estoppel. The Supreme Court held that the decision at the revocation hearing did not bar the trial, reasoning that although the threshold requirements for collateral estoppel were "arguably" satisfied, public policy precluded the doctrine's application. (*Id*. at pp. 342–343.)

### c. Kagan Received "Full and Fair" Hearings in 2007 and 2012

Kagan does not contend she did not receive notice of the charges against her in the 2007 criminal trial and the 2012 probation revocation proceedings. She had appointed counsel in both proceedings, as well as the opportunity to be heard and to confront witnesses. (See *Chambers v. Mississippi, supra*, 410 U.S. at p. 294.) As previously noted, the judgment in the 2007 criminal case was affirmed on appeal and Kagan has not directly challenged the revocation of her probation. This record demonstrates that Kagan had a "full and fair" trial and probation revocation hearing.

### d. Common Issues

The legal issues presented by the complaint in this case are the same issues that were necessarily litigated in the 2007 criminal case and 2012 probation revocation proceeding. For example, the second cause of action is based on a challenge to the jury instructions in the 2007 criminal case. Any such challenge was necessarily resolved in the criminal case, including through the appellate process. Kagan cannot attack the validity of the 2007 criminal case, including the correctness of the jury instructions, in a civil suit for fraud.

The same is true of the first and third causes of action, which challenge the validity of the 2012 probation revocation. The legal issue underlying the first and third causes of action is whether Kagan violated her probation in 2012 since she was disabled and Jake was her service dog. But that issue was necessarily decided at the 2012 probation revocation hearing. Even assuming Kagan was disabled and Jake was her service dog, and that those facts provided a defense to the probation violation charges being litigated at the probation revocation hearing, Kagan's remedy was a direct appeal from the probation revocation order. She cannot, however, collaterally attack the 2012 probation revocation in a civil case for damages under the ADA or common law torts.

10

C.	*Costs*

Kagan challenges the award of costs to the county.  But a prevailing party is statutorily entitled to costs "as a matter of right."  (Code Civ. Proc., § 1032, subd. (b).)  The statute defines "prevailing party" as, among other things, "a defendant in whose favor a dismissal is entered" and "a defendant where neither plaintiff nor defendant obtains any relief."  (Code Civ. Proc., § 1032, subd. (a)(4).)  Thus, having obtained summary judgment against Kagan, the county was the prevailing party.  As such, the county was entitled to costs as a matter of right.

## DISPOSITION

The summary judgment is affirmed.  Each side shall bear their own costs on appeal.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

11