Filed 5/27/15  Parker v. Wells Fargo Home Mortgage CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ERWIN L. PARKER et al., | B254343 |
| Plaintiffs and Appellants, | (Los Angeles County |
| v. | Super. Ct. No. VC063213) |
| WELLS FARGO HOME MORTGAGE, INC., etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Margaret M. Bernal, Judge.  Affirmed.

Erwin L. Parker, Deborah Brown Parker, in pro. pers., for Plaintiffs and Appellants.

Anglin Flewelling Rasmussen Campbell & Trytten, Robert Collings Little, Robin C. Campbell for Defendant and Respondent.

## INTRODUCTION

Plaintiffs and appellants Erwin L. Parker and Deborah Brown-Parker (plaintiffs) appeal from judgment of dismissal after an order sustaining a demurrer to their complaint without leave to amend in favor of defendant and respondent Wells Fargo Home Mortgage (defendant). Plaintiffs contend that the trial court erred in sustaining the demurrer, concluding that plaintiffs' lawsuit was barred by the doctrine of res judicata and was preempted by the Home Owners' Loan Act (12 U.S.C. §§ 1461 et seq.) (HOLA). We affirm.

## BACKGROUND

Plaintiffs owned real property located in Lakewood, California (the Property) pursuant to a grant deed giving them title as "husband and wife, as joint tenants." Plaintiffs, as "husband and wife," borrowed $850,000.00 from defendant's predecessor, Wachovia Mortgage, FSB (Wachovia), and executed an adjustable rate mortgage loan (the Loan). Plaintiffs, as "HUSBAND AND WIFE," secured the Loan with a deed of trust on the Property, in favor of Wachovia and "its successors and/or assignees."

Wachovia merged with defendant, and according to defendant Wachovia became a division of defendant. Plaintiffs made payments on the Loan, but they ultimately stopped doing so. According to the United States bankruptcy court docket, Mr. Parker, who was represented by counsel, filed for Chapter 13 bankruptcy protection, and that proceeding was voluntarily converted to a Chapter 7 bankruptcy proceeding. Defendant moved for relief from the automatic stay in bankruptcy, and the bankruptcy court granted the motion. Mr. Parker received a Chapter 7 discharge and his bankruptcy case was closed.

While defendant's motion for relief from the automatic stay was pending in Mr. Parker's bankruptcy proceeding, Ms. Brown-Parker, through the same counsel that represented Mr. Parker in his bankruptcy proceeding, filed a complaint against, inter alia, Wachovia, as a division of defendant (first lawsuit). Ms. Brown-Parker subsequently filed a 20 page first amended complaint (FAC) against, inter alia, defendant.

2

Ms. Brown-Parker alleged nine causes of action in the FAC: fraud, misrepresentation, unfair business practices, breach of contract as a third party beneficiary, breach of the covenant of good faith and fair dealing, violation of Civil Code section 2923.6, to remove cloud on title, declaratory relief, and lack of standing to foreclose. In each of Ms. Brown-Parker's causes of action, except her cause of action in which she requested that the trial court find that defendant "lack[s] standing to pursue any trustee sale or any other process against the Property," she sought to enjoin defendant from foreclosing on the Property.

In Ms. Brown-Parker's fraud cause of action, she alleged that defendant "directed her to stop making payments [on the Loan], claiming that only when she was behind in payments would she receive attention and be considered for a loan modification." According to Ms. Brown-Parker, this representation was false because "she was eligible while current on her loan." Ms. Brown-Parker alleged that she "was never late on a single payment until the representations of [defendant]." In Ms. Brown-Parker's misrepresentation cause of action, she alleged defendant misrepresented to her "that as long as she was engaged in the loan modification process, that her home would not be foreclosed upon," and "that the foreclosure process would be stopped until a final decision was made on her loan modification request."

In Ms. Brown-Parker's unfair business practices cause of action, she alleged that the "fraud and misrepresentation of [defendant] . . . mentioned in this [FAC] constitute unfair or fraudulent business acts and practices within the meaning of California Business and Professions Code Section 17200 et seq." In Ms. Brown-Parker's breach of contract as a third party beneficiary cause of action, she alleged that defendant "executed a formal participation agreement and has agreed to comply with the terms and conditions of the Making Home Affordable Program," and that she was "a Third Party Beneficiary of that written contract." Ms. Brown-Parker alleged that defendant breached that contract by failing to negotiate in good faith regarding, and refusing to enter into, a permanent loan modification.

3

In Ms. Brown-Parker's breach of the covenant of good faith and fair dealing cause of action, she alleged that "implied in every contract" is a covenant of good faith and fair dealing. Ms. Brown-Parker alleged that defendant intentionally hid from her "the fact that [defendant was] engaged in the business of issuing loans to unsuspecting homeowners who could not afford the monthly payments, and whom they knew of should have know[n] would have a high percentage of foreclosures. [Defendant was] obligated to inform [her] of this information and intentionally failed to do so, breaching the implied covenant of good faith and fair dealing."

In Ms. Brown-Parker's cause of action for violation of Civil Code section 2923.6, she alleged that defendant violated that statue "by repeatedly failing and refusing to offer [her] a permanent loan modification, despite the legal obligation to do so." In Ms. Brown-Parker's cause of action to remove cloud on title, she alleged that defendant's claim that it holds title to a deed of trust recorded against the Property is invalid because "the deed of trust through which [defendant] claim[s title] is invalid and unenforceable. [¶] [Ms. Brown-Parker] seeks a determination that the deed of trust is void. She seeks a declaration that . . . [defendant] be declared to have no estate, right, title or interest in [the Property] through the invalid deed of trust . . . ."

In Ms. Brown-Parker's declaratory relief cause of action, she sought a "declaration as to the validity of the loan agreement, loan transactions, and [defendant's] right to proceed with a Trustee Sale of the Property." In that cause of action, she "contends that the loan agreement is void based on defendant['s] fraud," and as a "further contention" that "[defendant] failed to provide [her] with full disclosure of the terms of the note[], [and] the assignment, servicing, and securitization of the loan . . . resulting in [her] being bound to the extraordinary high interest rates that [she] cannot afford, and to an 'adjustable' rate mortgage that never adjusts downward with decreases in the interest rate."

In Ms. Brown-Parker's cause of action regarding the lack of standing to foreclose, she alleged that defendant "failed and refused to produce any note signed by [her] or any other document evidencing any ownership on their part of a note or trust deed on the

4

property," and therefore, "[defendant has] no ownership interest in a note or trust deed secured by [the Property]." Ms. Brown-Parker alleged that as a result, defendant "lack[s] standing to commence a foreclosure on [the Property] or to instruct . . . [a] Trustee . . . to commence or prosecute a foreclosure through Trustee's sale."

Ms. Brown-Parker sought as relief (1) compensatory damages; (2) punitive damages; (3) issuance of preliminary and permanent injunction preventing defendant from foreclosing on the Property; (4) an order removing the deed of trust as a cloud on title; (5) a declaration that defendant has no interest in the Property; (6) attorney fees; and (7) such other and further relief as the trial court may deem just and proper.

Defendant demurred to the FAC. The trial court sustained the demurrer without leave to amend, stating, inter alia, that Ms. Brown-Parker's "claims regarding the loan origination process," including "nondisclosures and misrepresentations regarding mortgage loans," were preempted by HOLA; defendant did not owe Ms. Brown-Parker a duty to verify her ability to repay the Loan; defendant did not owe Ms. Brown-Parker a duty to modify the Loan; Ms. Brown-Parker cannot quiet title to the Property because she did not pay the secured debt; the declaratory relief cause of action failed because the breach of an obligation, if any, had already occurred**;** and defendant was not required to possess the original promissory note. The trial court dismissed defendant from the first lawsuit. There is no evidence in the record that Ms. Brown-Parker appealed from the trial court's order of dismissal.

A notice of default and election to sell under deed of trust was recorded, and shortly thereafter, a notice of trustee's sale was recorded. About six months after the trial court dismissed defendant from the first lawsuit, and about one month after notice of trustee's sale was recorded, plaintiffs, acting in propria persona, filed a 23 page verified complaint, exclusive of attachments, against, inter alia, defendant, alleging two causes of action: rescission and cancellation of written instruments (second lawsuit). Plaintiffs sought "Preliminary and Permanent Injunctive Relief and Quiet title of [the Property] against Defendants . . . claiming any legal or equitable right, title, estate, lien, or interest in [the Property] adverse to [plaintiffs'] title . . . ." Plaintiffs alleged, inter alia, that the

5

Loan and deed of trust were void because defendant assumed the liabilities of Wachovia, "no agent of [Wachovia] ever countersigned [the Loan]," and Wachovia "did not disclose [to plaintiffs] all the material facts in the alleged agreements." Plaintiffs alleged that Wachovia also failed to disclose that the "mortgage transactions were, in fact, not 'Loans' of [Wachovia's] assets, but some sort of investment transaction scheme using the Uniform Commercial Code that allowed [Wachovia] the ability to create profits on their books and to be unjustly enriched at the expense of [plaintiffs]."

In plaintiffs' recession cause of action, they allege that they "are entitled to rescind [the deed of trust and the Loan] and recover their consideration paid thereunder because their consent to the purported agreements was given by mistake, and/or obtained through fraud exercised by the Defendants, and/or the consideration promised by Defendants failed in a material respect[,] and through the fault of Defendants[,] Plaintiffs have not received any consideration from [defendant]." In plaintiffs' cancellation of written instruments cause of action, they seek to have the Loan and deed of trust cancelled claiming that they were fraudulently induced to execute them, defendant made material misrepresentations and concealed material facts, and as to the Loan, there was failure of consideration as to it.

Plaintiffs sought as relief (1) a judgment that defendant has no interest in the Property; (2) the deed of trust and the promissory note be cancelled and declared void; (3) defendant deliver the deed of trust and promissory note to the clerk of the court for cancellation; (4) restitution of the sum of $74,479.02, which was the amount plaintiffs paid on the promissory note; (5) $223,437.06 in damages in the event defendant fails to surrender the deed of trust and promissory note to the clerk of the court for cancellation; (6) punitive damages; (7) a declaration that the "Mortgage Transactions" and promissory note have been rescinded; (8) permanent injunctive relief against defendant; (9) for an order quieting title to the Property; (10) costs of suit; and (11) such other and further relief as the trial court may deem just and proper.

Defendant demurred to the complaint in the second lawsuit on the grounds that, inter alia, the complaint was barred by the doctrine of res judicata and preempted by

6

HOLA. Defendant filed a request for judicial notice of several documents, including documents from the first lawsuit: the FAC, notice of the trial court's ruling on defendant's demurrer to the FAC, and notice of entry of judgment or order.

At the hearing on the demurrer, defendant appeared telephonically and plaintiffs did not appear. Defendant "submit[ed] without a hearing." The trial court granted defendant's request for judicial notice, and sustained defendant's demurrer, stating, "Based on these documents [submitted with the request for judicial notice], it is apparent that this is Plaintiffs' second attempt at halting foreclosure of their real property, located in Lakewood. Defendant's demurrer to the prior action . . . was sustained without leave to amend on September 18, 2012. The current pleading appears to be an improper attempt at an end-run around that judgment. [¶] Demurrer is sustained without leave to amend on the basis that it is barred by *res judicata*. This is true even though Mr. Parker was not a party to the prior action because he was in privity with Ms. Brown-Parker, and even though the claims asserted here are slightly different, because *res judicata* bars any claims that could have been raised in the prior action. *Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 576. [¶] Plaintiff[s'] pleading is confusing but appears to allege that no actual loan occurred. However, the documents of which the Court has taken judicial notice evidence an $850,000 loan secured by a Deed of Trust. Plaintiffs pray for judgment cancelling the deed of trust and promissory note. To the extent the Court understands Plaintiffs' allegations, they are legally defective in that they are preempted by HOLA [the Home Owners' Loan Act, 12 U.S.C. § 1461 et seq.]. *Weiss v. Washington Mutual Bank* (2007) 147 Cal.App.4th 72, 77."

## DISCUSSION

### A.    Adequate Record

Plaintiffs did not include in the record the reporter's transcript of the hearing on the demurrer. California Rules of Court, rule 8.120(b) requires a reporter's transcript on appeal only if "an appellant intends to raise any issue that requires consideration of the

7

oral proceedings in the superior court . . . ." California Rules of Court, rule 8.130(a)(4) provides that an appellant may "elect[] to proceed without a reporter's transcript." We therefore requested the parties to brief whether plaintiffs' failure to provide a reporter's transcript or a suitable substitute warrants affirmance based on the inadequacy of the record. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *In re Kathy P.* (1979) 25 Cal.3d 91, 102.)

The record reflects that plaintiffs did not appear at the hearing on the demurrer, and defendant "submit[ed] without a hearing." Defendant concedes therefore that "the Reporter's Transcript would not likely, in this instance, contribute meaningfully to [our] assessment of [plaintiffs'] claims of error." Plaintiffs' failure to include in the record the reporter's transcript of the hearing on the demurrer does not warrant affirmance of the trial court's ruling based on the inadequacy of the record.

Defendant contends that plaintiffs failed to provide an adequate record that we have jurisdiction because it does not contain a judgment of dismissal. It is not necessary that there be a judgment of dismissal. An "order sustaining the demurrer without leave to amend is not appealable. The propriety of the trial court's ruling [sustaining the demurrer without leave to amend] is subject to review on appeal from the appealable order of dismissal, however." (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1.)

Plaintiffs have provided us with an April 2, 2014, order of dismissal, and we order the record augmented with it. We have jurisdiction to entertain the appeal.

Defendant also contends that plaintiffs failed to provide an adequate record because it does not contain defendant's reply to plaintiffs' opposition to the demurrer. Plaintiffs designated that the record include defendant's reply. We have obtained a copy of defendant's reply from the trial court's records, and order the record augmented with it.

8

## B. Res Judicata

Plaintiffs contend that the trial court erred in sustaining the demurrer on the ground that their lawsuit was barred by the doctrine of res judicata. We disagree.

### 1. *Standard of Review*

We review de novo a judgment based on an order sustaining a demurrer. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81.) "As the Supreme Court has observed, 'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]' [Citation.]" (*Los Angeles Memorial Coliseum Commission v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 819.)

Res judicata is a defense that may be raised by demurrer. (Code Civ. Proc., § 430.30, subd. (a); *Estate of Dito* (2011) 198 Cal.App.4th 791, 795.) Whether res judicata applies is a question of law, which we review de novo. (*Louie v. BFS Retail & Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544, 1553; *Nicholson v. Fazeli* (2003) 113 Cal.App.4th 1091, 1100.)

### 2. *Applicable Law*

Our Supreme Court stated, "'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . . Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897, fn. omitted; see also *Citizens Planning Assn. v. City of Santa Barbara* (2011) 191 Cal.App.4th 1541, 1549; Code Civ. Proc., § 1908, subd. (a)(2).)[1]

Res judicata applies if (1) the judgment in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties in the prior proceeding. (*In re Anthony H.* (2005) 129 Cal.App.4th 495, 503; *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202; see *Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 972; *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 810-811.)

For purposes of res judicata, the term "cause of action" refers neither to the legal theory asserted by a plaintiff nor to the remedy the plaintiff seeks. (*Mycogen Corp. v. Monsanto C*o., *supra*, 28 Cal.4th at p. 904; *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795-796.) Instead, "California has consistently applied the 'primary rights' theory, under

---

[1]  "'The doctrine of collateral estoppel is one aspect of the concept of res judicata. In modern usage, however, the two terms have distinct meanings.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.*, *supra*, 28 Cal.4th at pp. 896-897, fn. 7.) In contrast to the doctrine of res judicata, the doctrine of "collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Id.* at p. 896.) Under the doctrine of collateral estoppel, "'"The first action is not a complete merger or bar, but operates as an estoppel or conclusive adjudication as to such issues in the second action which were actually litigated and determined in the first action. [Citation.]" [Citation.]' [Citation.]" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 866-867.)

which the invasion of one primary right gives rise to a single cause of action." (*Slater v. Blackwood*, *supra*, 15 Cal.3d at p. 795.) The primary right theory "provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] . . . [¶] As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681; accord, *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 641; *Boyce v. T.D. Service Co.* (2015) 235 Cal.App.4th 429, 435-436.) A particular injury might be compensable under multiple legal theories and might entitle a party to several forms of relief; nevertheless, it will give rise to only one cause of action. (*Crowley v. Katleman*, *supra*, 8 Cal.4th at pp. 681-682.)

### 3. Analysis

"The fact that the [judgment in the prior action] resulted from the sustaining of a general demurrer does not preclude application of the res judicata doctrine." (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1427-1428.) "Res judicata applies only if there is a decision on the merits." (*Maddern v. Superior Court* (1972) 22 Cal.App.3d 998, 1004.) A demurrer is "a method of deciding the merits of the cause of action on assumed facts without a trial. [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 437, fn. 4.) "A judgment given after the sustaining of a general demurrer on a ground of substance, . . . may be deemed a judgment on the merits, and conclusive in a subsequent suit . . . ." (*Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52; *Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 216 [the res judicata doctrine "may apply to a final judgment, i.e., a dismissal, even though entered after sustaining a demurrer, if the demurrer was sustained on substantive grounds"].)

Plaintiffs do not dispute that the judgment in the first lawsuit is final, and there is no evidence in the record that Ms. Brown-Parker appealed from the trial court's order of

11

dismissal in that lawsuit. Plaintiffs also do not dispute that Mr. Parker was in privity with his wife, Ms. Brown-Parker, in connection with Ms. Brown-Parker's prior lawsuit.

"Privity refers to a relationship . . . 'sufficiently close' so as to justify applying collateral estoppel. [Citation.]" (*Mueller v. J.C. Penney Co.* (1985) 173 Cal.App.3d 713, 723.) "In the context of a res judicata determination, privity '"refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.'"' [Citation.] '"[T]he determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate. [Citation.] '"Whether someone is in privity with the actual parties requires close examination of the circumstances of each case."'"' [Citation.]" (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 689-690.) "Under California law, spouses are in privity with each other where the cause of action in the prior litigation was 'community in nature' and the 'proceeds of any judgment that might have been recovered . . . would have belonged to both husband and wife, as community property.' [Citations.]" (*Mueller v. J.C. Penney Co., supra,* 173 Cal.App.3d at p. 723.) Plaintiffs held title to the Property pursuant to a grant deed as "husband and wife, as joint tenants." There is a rebuttable presumption that "property acquired during marriage by either spouse, other than by gift or inheritance, is community property." (*In re Marriage of Weaver* (2005) 127 Cal.App.4th 858, 864.)

Plaintiffs, as "husband and wife," executed the Loan, and executed the deed of trust on the Property securing the Loan. While defendant's motion for relief from the automatic stay was pending in Mr. Parker's bankruptcy proceeding, Ms. Brown-Parker commenced the first lawsuit, seeking to prevent defendant from foreclosing on the Property. The same counsel that represented Mr. Parker in his bankruptcy proceeding, represented Ms. Brown-Parker in the first lawsuit. Mr. Parker and Ms. Brown-Parker were joint obligors on the note and jointly owned the Property, and had the identical

12

interests in the subject lawsuit. They were married and lived together on the Property. Mr. Parker was in privity with Ms. Brown-Parker regarding the first lawsuit. They both filed the second lawsuit. Mr. Parker's relationship with his wife was "sufficiently close" so as to justify application of the doctrine of res judicata and collateral estoppel. (*Mueller v. J.C. Penney Co., supra,* 173 Cal.App.3d at p. 723.)

Plaintiffs contend that their claims of rescission and cancellation of written instruments alleged in the second lawsuit were not litigated in the first lawsuit. Under the "primary rights" theory, however, plaintiffs had but one cause of action; plaintiffs' primary right in both lawsuits was to be free from a nonjudicial foreclosure of their property pledged to secure the Loan obligation. In the first lawsuit, Ms. Brown-Parker sought to enjoin defendant from foreclosing on the Property, a determination that the deed of trust is void, and a declaration that defendant have no interest in the Property through the deed of trust and of "the validity of the loan agreement, loan transactions, and [defendant's] right to proceed with a Trustee Sale of the Property." Ms. Brown-Parker also claimed that defendant lacked standing to commence or prosecute a foreclosure through a trustee's sale. In the second lawsuit, plaintiffs sought to enjoin defendant from claiming any lien or interest in the Property; rescind the Loan and deed of trust; have the Loan and deed of trust cancelled; and obtain a judgment that defendant had no interest in the Property.

"[U]nder [the doctrine of res judicata], all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. '"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.]" (*Mycogen Corp.*, *supra*, 28 Cal.4th at p. 897.) "The law is settled that a 'prior final judgment on the merits not only settles issues that were not actually litigated but also every issue that might have been raised and litigated in the first action.' (*Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 446 [164 Cal.Rptr. 913].) When a matter is within the '""scope of the [prior] action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is

13

conclusive on it . . . .  Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.'"'"' (*Villacres v. ABM Industries Inc.*[, *supra*,] 189 Cal.App.4th [at p.] 576 . . . , citation omitted.)"  (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1529.)  Plaintiffs' lawsuit was barred by the doctrine of res judicata.

### C.    Other Contention

Because we affirm the judgment based on res judicata principles, we do not reach plaintiffs' contention that the FAC was not preempted by HOLA.

**DISPOSITION**

The judgment is affirmed.  Defendant is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J